**COMMUNITY CARE CENTERS, INC.,** New Horizons Developmental Center, Myron Bradburn and Bonita J. Bradburn, Appellants–Defendants,

v.

Cheryl SULLIVAN in her capacity as Secretary of Family and Social Services Administration, and James M. Verdier in his capacity as Director of the Office of Medicaid Policy and Planning, Family and Social Services Administration Appellees–Plaintiffs.

No. 18A04–9708–CV–354.

Court of Appeals of Indiana.

Nov. 17, 1998.

**1236**

Gregory A. Huffman, DeFur Voran Hanley Radcliff & Reed, Muncie, William P. Tedards, Jr., Washington, DC, for Appellants–Defendants.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellees–Plaintiffs.

## OPINION

MATTINGLY, Judge.

Community Care Centers, Inc., New Horizons Developmental Center, and Myron and Bonita Blackburn, the owners of the facilities during the period at issue, (collectively referred to as Community Care) appeal the summary judgment entered against them and in favor of Cheryl Sullivan in her capacity as Secretary of the Indiana Family and Social Services Administration and James Verdier in his capacity as the Indiana Director of Medicaid Policy and Planning, Family and Social Services Administration (collectively referred to as the State). We consolidate and restate the issues Community Care raises on appeal as:

1. Whether the remedy of restitution based on the reversal of a judgment can properly be granted on summary judgment without consideration of whether a health care provider was unjustly enriched as a result of the judgment which was reversed;

2. Whether a trial court can properly find unjust enrichment as a matter of law when a health care provider is reimbursed by the State pursuant to an injunction which is later reversed but when the reimbursement rates paid by the State under the injunction still do not reimburse the provider for its reasonable costs;

3. Whether the State is barred by the doctrine of "unclean hands" from seeking equitable relief from the only provider who benefitted from an injunction when it declines to seek restitution from other providers who benefitted from a different order enjoining a rule that was never applied to any provider; and

4. Whether the State's action for restitution arising from its reimbursement contract with a provider can be properly allowed to proceed when the provider's unjust enrichment counterclaim is dismissed on grounds that the parties' rights were determined by the express contract between them.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Medicaid program is jointly administered by the state and federal governments and provides a mechanism to reimburse certain participating health care providers for nursing home care and other services to Medicaid beneficiaries. Community Care participated in the program and operated a number of facilities which provided such services. Medicaid providers are reimbursed pursuant to provider contracts entered into with the State, in accordance with State regulations. This action arises out of two challenges Community Care mounted to the State's reimbursement of some of the Community Care facilities.

### 1. The Blackford Injunctions

In an action brought in the Blackford Circuit Court, Community Care sought, and was granted, injunctions against the use of two "limiters" that were applied by the State in determining Medicaid reimbursement rates. *See Indiana Bd. of Pub. Welfare v. Tioga Pines*, 622 N.E.2d 935 (Ind.1993). One limiter, the Gross National Product implicit price deflator (GNP/ipd), generally limited reimbursement increases to the rate of inflation. The other limiter, the "tests of reasonableness," had the effect of limiting a provider's budgeted cost increases which were out of line with that same provider's prior years' expenses and with the costs incurred by other providers. *Id.* at 941–42.

The injunctions prohibited the State from using the GNP/ipd limiter as the sole determinant [1] of a provider's reimbursement rate and from using two aspects of the "tests of reasonableness." Specifically, the State was enjoined from comparing facilities without regard to the size of the facilities and from making line item comparisons of facilities. In response to the injunctions, the State recalculated Community Care's rates pursu-

ant to those state regulations which had not been enjoined,[2] using limiters other than the GNP/ipd and the two enjoined aspects of the "tests of reasonableness." The Community Care facilities operated at a loss during the pendency of the injunctions despite the recalculation of the reimbursement rates. Our supreme court reversed the injunctions in *Tioga Pines*, holding that the "use of the GNP/ipd as a maximum annual rate limiter and the tests of reasonableness were not improper." 622 N.E.2d at 946.

### 2. The Federal District Court Injunction

The second action in which Community Care obtained an injunction against the State was filed on behalf of Community Care's Hamilton Heights [3] facility and some of its residents. At the time that action was brought, the Medicaid program classified long-term care facilities into three categories: intermediate care facility (ICF), skilled nursing facility (SNF), and intermediate care facility for the mentally retarded (ICF/MR). ICF standards were less rigorous than those governing ICF/MRs, and ICF facilities were reimbursed at a lower rate.

In 1984, the Indiana State Board of Health established "Rule 7," a level of care between ICF and ICF/MR. Hamilton Heights housed about 90 mentally retarded and developmentally disabled patients and was designated as a Rule 7 ICF. Rule 7 facilities had to meet more stringent requirements than ICFs; in particular, they were required to provide additional staff training and to provide a program which satisfied certain requirements for the developmentally disabled residents. This, Hamilton Heights maintained, increased its costs over those incurred by an ICF. If a Rule 7 facility did not meet the more stringent standards, it could be subject to decertification.

---

**1.** In its brief, the State represents the injunction as "exempting the Community Care facilities from the maximum annual limiter." Brief of Appellees at 6. The injunction did not have that effect. At the time, the State applied five rate limiters to a provider's calculated rate. The State was enjoined only from using the GNP/ipd limiter as the *sole determinant* of a provider's rate. *See Tioga Pines*, 622 N.E.2d at 938.

**2.** The trial court did not establish any reimbursement rate for Community Care, nor did it order the State to calculate the rates in any particular manner. Rather, the State applied its own regulations to calculate reimbursement rates that would comply with the injunction.

**3.** The facility's name has since been changed to New Horizons.

Because the federal Medicaid program recognized no categories between ICF and ICF/MR, and because Hamilton Heights had not been certified as an ICF/MR,[4] Hamilton Heights was being reimbursed at the lower ICF rates. It sought and obtained an injunction in the federal district court for the Southern District of Indiana ordering the State to reset Hamilton Heights' reimbursement rate at a level equal to its documented cost rate between January 1, 1989 and July 6, 1990. The district court found that, although it cost Hamilton Heights about $82.90 per day to deliver its services to each patient, the facility was being reimbursed only $47.40 per patient per day. The district court also found that the facility's costs were reasonable, that it delivered its services "efficiently and economically," and that there was no evidence that it provided any excessive or unnecessary services. R. at 1599.

In *Lett v. Magnant*, 965 F.2d 251 (7th Cir.1992), the Seventh Circuit reversed the injunction on grounds the district court had improperly applied the language of the reimbursement standard in effect prior to the enactment of the federal Boren Amendment, 42 U.S.C. § 1396a(a)(13)(A). The original Medicaid Act required states to reimburse facilities for their "reasonable" costs in providing care. The Boren Amendment replaced the "reasonable cost" standard, under which providers were paid for the reasonable costs of services actually provided, with a system of prospective rate setting, under which rates for various types of services and procedures were paid in advance. Noting that the primary purpose of the Boren Amendment was cost containment, the Seventh Circuit held that "a state's inadequate reimbursement of one efficiently and eco-

nomically operated facility does not necessarily constitute a Boren amendment violation." *Id.* at 256. In reversing the injunction, the Seventh Circuit held it was "neither arbitrary and capricious nor unreasonable for the Indiana DPW to require Hamilton Heights to be certified as an ICF/MR in order to receive enhanced reimbursement rates." *Id.* at 261.

### 3. *Restitution Action*

After the Blackford and Southern District injunctions were reversed on appeal, the State brought the present action for restitution in the Delaware Superior Court. That court determined on summary judgment that the State was entitled as a matter of law to recover "the difference between the sums paid to Community Care under the erroneous injunctions and the amounts it would have received under the State's lawful rate-setting methodology in the absence of the injunctions." R. at 938. Community Care appeals the trial court's grant of summary judgment to the State.

Community Care also appeals the dismissal of a counterclaim it filed with regard to the Hamilton Heights facility seeking additional reimbursement from the State on an unjust enrichment theory.

### STANDARD OF REVIEW

In reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We do not weigh the evidence, but will consider the facts in the light most favorable to the non-

**4.** The State contends Hamilton Heights had not been so certified because it was not diligent about applying, because its application was for only part of its facility and the State did not recognize "partial" ICF/MRs, and because certain deficiencies at the facility needed to be corrected.

Community Care contends the State actively resisted its attempts to convert Hamilton Heights to an ICF/MR. It contends that the State refused Hamilton Heights' initial application on grounds the State's quota of ICF/MR beds had been filled; that only after lengthy administrative litigation did the State agree to accept Hamilton Heights'

application; that only after three years and additional litigation did the State actually certify the facility as an ICF/MR; but that after certification, the State refused to enter into a provider agreement with Hamilton Heights.

In an injunction dated October 6, 1993, the Delaware Circuit Court found that the State was withholding the provider agreement until Hamilton Heights repaid the allegedly excess reimbursement which is the subject of this appeal. R. at 1664–65. It ordered the State to immediately cease withholding the provider agreement. *Id.* at 1668. The State does not mention or address this injunction in its brief.

moving party. *Grose v. Bow Lanes, Inc.*, 661 N.E.2d 1220, 1224 (Ind.Ct.App.1996). We must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to those facts. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986). On appeal from a grant of summary judgment, the burden is on the appellant to prove the trial court erred in determining there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 813 (Ind.Ct. App.1995). We will affirm the trial court's judgment if it is sustainable on any basis. *Tioga Pines*, 622 N.E.2d at 940.

## DECISION AND DISCUSSION

1. *The Unjust Enrichment Requirement*

■ The State's argument appears to be premised on the assertion that even though the State sought the remedy of restitution, "[o]n the facts of this case, ... no special showing of unjust enrichment was required." Brief of Appellees at 20. The State asserts that when an injunction is reversed, the party which was enjoined is entitled to restitution regardless of whether there was any showing that the other party was unjustly enriched. In other words, the State argues restitution is a matter of right where a benefit is obtained under an erroneous judgment and is not a matter of equitable discretion. We disagree, and believe that the decisions upon which the State relies do not support the State's position.

The State relies on a statement in *P.B. v. T.D.*, 561 N.E.2d 749, 751 (Ind.1990): "When a party to an action pays a judgment that is later reversed on appeal, that party is entitled to restitution." That decision involved a spouse seeking a refund of an attorney fee award which was reversed on appeal in a custody dispute. The *P.B.* decision did not address the application (or nonapplication) of traditional equitable considerations in a restitution action of that type. The State also points to *Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co.*, 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517 (1919) and its progeny. *Arkadelphia* allowed restitu-

tion upon reversal of an erroneous injunction against railroad rate regulations. Like *P.B.*, that decision did not explicitly address unjust enrichment principles. However, it did refer generally to the application of equitable principles in a restitution action: "it is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process." *Id.* at 145–46, 39 S.Ct. 237.

■ We believe the equitable concept of unjust enrichment necessarily inheres any time the remedy of restitution is sought by a litigant, and we read our Indiana precedent accordingly. In *St. Mary's Med. Ctr. v. United Farm Bur.*, 624 N.E.2d 939 (Ind.Ct. App.1993), we addressed cases involving payments made under a mistake of fact that some obligation required such payment. We noted that "[r]estitution in such cases is grounded in the equitable principle that one who has paid money to another who is not entitled to have it should not suffer unconscionable loss nor unjustly enrich the other. Unjust enrichment is typically regarded as a prerequisite to restitution." *Id.* at 941. Courts of equity invoke the remedy of restitution in order to avoid unjust enrichment, and unjust enrichment is an "indispensable element" of such a quasi-contractual action. *Indianapolis Raceway Park v. Curtiss*, 179 Ind.App. 557, 560, 386 N.E.2d 724, 726 (1979). Indeed, we have characterized the concepts of restitution and unjust enrichment as synonymous. See *Nehi Beverage Co., Inc. of Indianapolis v. Petri*, 537 N.E.2d 78, 85 (Ind.Ct.App.1989), where we referred to "[t]he theory on which the plaintiff in this suit seeks money damages, unjust enrichment, sometimes referred to as restitution...."

As such, we believe the requirement of a showing of unjust enrichment is implicit in the decisions relied upon by the State where our courts discuss restitution without explicitly phrasing the analysis in terms of that prerequisite to restitutionary relief, unjust

enrichment.[5] We further believe the weight of authority in other jurisdictions addressing reversal of judgments is in accord with our opinions. *See, e.g., Atlantic Coast Line v. Florida,* 295 U.S. 301, 310, 55 S.Ct. 713, 79 L.Ed. 1451 (1935) (noting that a person who has conferred a benefit upon another in compliance with a judgment is entitled to restitution when the judgment is set aside "unless restitution would be inequitable"); *Texaco P.R. v. Department of Consumer Affairs,* 60 F.3d 867, 875 (1st Cir.1995) (holding that such cases "are tested by the same standards as other claims for restitution," and addressing a number of the traditional equitable considerations).

We thus cannot accept the State's characterization of *Arkadelphia* and *P.B.* as providing the State a remedy which is restitutionary, yet at the same time is "mandatory," Brief of Appellees at 12, "unconditional," *id.* at 1, or "a matter of right," *id.* at 15. The State invites us to completely sever, for the first time, the principles of restitutionary relief from their ancient roots in equity. We decline its invitation.

To the extent the trial court's judgment was based on its conclusion that "the State has an *unqualified* right to restitution upon reversal of an erroneous injunction," R. at 962 (emphasis supplied), the grant of summary judgment for the State was error.

## 2. *The Unjust Enrichment Showing*

The State argues in the alternative that even if a showing of unjust enrichment is a necessary basis for a restitution action, Community Care was unjustly enriched. According to the State, in the Blackford action Community Care was unjustly enriched because it was reimbursed at a higher rate than it would have been had the State's use of the GNP/ipd and "tests of reasonableness" limiters not been enjoined to the extent they were. In the federal action, the State asserts Hamilton Heights was unjustly enriched when it was reimbursed by the State at a rate which covered the facility's actual costs in operating its facility "efficiently and

economically," because reimbursement at that level was not required under the Boren Amendment. Noting that "unjust enrichment" can take the form of "unjust avoidance of a loss," *e.g., Reich v. Continental Cas. Co.,* 33 F.3d 754, 756–57 (7th Cir.1994), the State argues it is thus of no import that Community Care continued to lose money while it was reimbursed at rates determined under the injunctions.

■ The trial court did not explicitly find that Community Care was unjustly enriched. However, after improperly determining that the State was entitled to restitution absent any showing of inequity, the trial court went on to state that "under these circumstances, justice and equity require restitution." R. at 940. The designated evidence demonstrates that, as a matter of law, Community Care was unjustly enriched even though it was reimbursed pursuant to a formula calculated by the State according to the State's own regulations and it operated at a loss under that formula. Similarly, Hamilton Heights was unjustly enriched as a matter of law even though it was reimbursed by the State at a rate which did not cover its reasonable costs in operating its facility "efficiently and economically."

■ It is well established that one is enriched if he receives a benefit, Restatement of Restitution § 1 (1937), and that a benefit is conferred upon another not only when one adds to the property of another but also where, as here, one is saved from expense or loss. *Id.* cmt. B. *See, e.g., Omnibank v. United S. Bank,* 607 So.2d 76, 92 (Miss.1992) ("A person is enriched when he receives an economic benefit. This includes positive profits, a loss avoided, as well as discharge of debts."). In situations like the one before us, where a valid government regulation or procedure has been enjoined and improper payments have been made pursuant to the subsequently reversed injunction, this type of "enrichment" in the form of improper payments has typically been characterized as unjust.

---

**5.** *See, e.g., P.B.,* 561 N.E.2d at 751 (holding that one who benefits from a judgment which is subsequently reversed "must make as full *restitution to the claimant as the circumstances permit* .... ") (emphasis supplied).

In *Mitchell v. Riegel Textile,* 259 F.2d 954 (D.C.Cir.1958), the court addressed a situation where the district court had enjoined the Secretary of Labor from enforcing against certain textile mills a minimum wage determination. After the minimum wage determination was upheld on appeal, the Secretary sought an order that the mills make good their underpayment of wages during the time the injunction was in effect. The circuit court characterized the amount the mills saved and the employees lost as a result of the erroneous injunction against the valid wage regulation as "the amount by which the [mills] were unjustly enriched...." *Id.* at 955. It went on to note that the "unjust enrichment was complete" as soon as the underpayment of wages was made. *Id.* at 956.

A similar situation led to a similar result in *National Kidney Patients Ass'n v. Sullivan,* 958 F.2d 1127 (D.C.Cir.1992). There, the Department of Health and Human Services (HHS) was enjoined from reducing the reimbursement rates for home dialysis treatment. When the injunction was reversed because the district court lacked jurisdiction, HHS sought to recover the overpayments. The circuit court rejected the district court's determination that there had been no unjust enrichment because the payments the treatment provider received under the erroneous injunction were made in exchange for services rendered to the patients and thus were "not all profit." *Id.* at 1135. It held that HHS could apply the procedures which had been established for recoupment of overpayments to suppliers.

Community Care urges it could not have been unjustly enriched because the rates at which it was reimbursed under the injunctions were not "unreasonable." Community Care relies on *Texaco P.R.,* where the Puerto Rico Department of Consumer Affairs sought restitution from certain gasoline wholesalers based on profits they earned while a federal district court injunction prohibited the Department from enforcing regulations which limited the wholesalers' gross profit margins. The circuit court there first noted that restitution is founded on the concept of unjust enrichment, 60 F.3d at 875, and that a claim for restitution arising from "an errant injunction barring enforcement of a governmental regulation" is tested by the same equitable standards as other claims for restitution. *Id.* at 874.

The *Texaco* court then addressed the effect of the reasonableness of the wholesalers' profits on the question whether the wholesalers were unjustly enriched during the pendency of the injunction:

> [A] finding that the wholesalers' actual profit margins were unreasonably high would assist in showing that "the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it." The converse is equally true: the fact that the wholesalers' profits were reasonable (or unreasonably low, for that matter), tends to make the denial of restitution more in keeping with equitable principles. Either way, the reasonableness *vel non* of the wholesalers' profits is a concinnous factor for inclusion in the court's equitable balancing.

*Id.* at 877 (citation omitted).

Community Care points to uncontroverted evidence in the record that its facilities covered by the Blackford injunctions lost some ten million dollars during the period they were reimbursed at rates the State calculated pursuant to those injunctions. It also notes that the federal district court found as a fact that the Hamilton Heights facility was being reimbursed at a level well below the facility's reasonable costs of delivering its services efficiently and economically. Thus, Community Care argues, a denial of restitution is in keeping with equitable principles because it did not benefit during the pendency of the injunction from unreasonably high profit margins.

The *Texaco* case, however, did not address a situation like the one before us, where an overpayment resulted from an injunction against a state regulation which was ultimately determined to be valid. To the contrary, in *Texaco,* the Department of Consumer Affairs sought restitution based on permanent price control regulations it claimed it would have promulgated had not its temporary regulations been enjoined.

The district court there found that the temporary regulation was a stopgap measure and that the Department would not have implemented any further regulations of a permanent nature. As a result, the gasoline companies did not receive any monetary advantage from the erroneous injunction. *Id.* at 876.

We believe the *Texaco* court properly took into account the reasonableness of the wholesalers' profits under those circumstances. However, where, as here, the overpayments resulted from an erroneous injunction of a valid rate regulation, we do not believe the reasonableness analysis may properly be applied. In this situation, such an analysis would often be incompatible with the rule that "avoidance of a loss" may constitute the type of benefit that supports a finding of unjust enrichment.

Because the Community Care facilities were reimbursed during the pendency of the injunctions at rates higher than were required by valid rate-setting regulations, we cannot say the trial court erred to the extent it concluded Community Care was unjustly enriched. For that reason, its grant of summary judgment was appropriate.

### 3. Unclean Hands

Community Care asserts the State is precluded from seeking equitable relief in the form of restitution because the State has not sought restitution from other providers who may have benefitted from one of the injunctions reversed in the *Tioga Pines* decision.[6] Thus, it argues, the State has "unclean hands" by virtue of its decision to target only the Community Care facilities.

"'Unclean hands' is an equitable doctrine which means that one who seeks relief in a court of equity must be free of wrongdoing *in the matter before the court.*" *Foursquare Tabernacle v. Department of Metro. Dev.*, 630 N.E.2d 1381, 1385 (Ind.Ct. App.1994) (emphasis supplied). While the doctrine of unclean hands may be applied against the government, *United States v. Martell*, 844 F.Supp. 454, 459 (N.D.Ind.1994), it is not favored by the courts and is applied with reluctance and scrutiny. *Foursquare Tabernacle*, 630 N.E.2d at 1385.

We do not believe Community Care's unclean hands allegation raises an issue of wrongdoing "in the matter before the court." The State seeks from Community Care restitution of overpayments it made after the Blackford court enjoined the State's use of two limiters in calculating Medicaid reimbursement rates. Community Care alleges unclean hands based on the State's failure to seek reimbursement from other Medicaid providers who Community Care asserts benefitted from a different injunction issued by the Blackford court and reversed by the *Tioga Pines* decision. That injunction prohibited the use of a "change of ownership" provision which would have limited the Medicaid rate increases which might otherwise have resulted when facilities changed owners. The trial court found that this provision was enjoined before it was implemented and has never been applied to any provider. By contrast, the trial court found that Community Care's facilities were the only providers in the state which escaped the effects of the injunctions against the use of the "tests of reasonableness" and GNP/ipd

---

6. Community Care also asserts the State had unclean hands in the Hamilton Heights litigation, as demonstrated by the State's argument of a litigation position it knew to be false. Specifically, Community Care alleges the State argued "with nefarious motive" in the federal litigation that Hamilton Heights could obtain an appropriate reimbursement rate by converting to an ICF/MR while at the same time the State was blocking Hamilton Heights' attempts to so convert.

We believe Community Care's argument amounts to a collateral attack on the *Lett* decision and raises no issues that were not, or could not have been, raised in that litigation. For that reason, any relief available to Community Care must be sought in the *Lett* court and we decline to address here the propriety of those proceedings or the effect of the State's strategies in the federal court. *See, e.g., Hunter v. Harrell*, 88 Ind.App. 68, 70, 163 N.E. 295, 295–96 (1928) (relief on collateral attack on domestic judgment must be sought in the original cause); *Weisman v. Charles E. Smith Mgt.*, 829 F.2d 511, 513 (4th Cir.1987) (proper forum in which to assert that a party has perpetuated a fraud upon the court is the court which was allegedly the victim of the fraud).

limiters.[7]

The State's failure to seek restitution from facilities subject to a provision which was never implemented does not demonstrate "unclean hands" which would bar the State from seeking restitutionary relief from a provider who was the sole beneficiary of a different and unrelated injunction. The trial court did not err when it determined Community Care's "unclean hands" defense was without merit.

### 4. The Community Care Counterclaim

Community Care counterclaimed for restitution, seeking to recover the full value of the services provided by its Hamilton Heights facility. It noted that the reimbursement Hamilton Heights received from the State did not fully cover its costs between 1988 and 1993 and alleged the State was unjustly enriched as a result. The State moved to dismiss the counterclaim pursuant to Indiana Trial Rule 12(B)(6) and the trial court granted the State's motion.

A Rule 12(B)(6) motion to dismiss tests the legal sufficiency of the complaint. When reviewing a 12(B)(6) motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party and we draw every reasonable inference in favor of that party. Right *Reason Publications v. Silva*, 691 N.E.2d 1347, 1349 (Ind.Ct.App. 1998) We will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts which, even if true, would not support the relief requested in that complaint. *Id.* Further, we will affirm the trial court's grant of a motion to dismiss if it is sustainable on any theory or basis found in the record. *Id.*

The State moved to dismiss the counterclaim on grounds Hamilton Heights had executed provider contracts for reimbursement with the State during that period, agreeing to accept the Medicaid reimbursement as payment in full for its services. It argued Hamilton Heights could not seek pay-ment on a quasi-contractual theory of unjust enrichment when its relationship with the State was governed by an express contract. See, e.g., *Bayh v. Sonnenburg*, 573 N.E.2d 398, 409 (Ind.1991) (noting the general rule that recovery cannot be grounded on a claim of unjust enrichment where a contract controls the rights of the parties). Because the relationship between the State and Community Care was governed by the provider contracts, it was not error for the trial court to dismiss Community Care's quasi-contractual counterclaim.

Community Care argues that to the extent its claim is incompatible with the quasi-contractual remedy of restitution based on unjust enrichment, the State's claim for restitution is equally incompatible because the overpayment alleged by the State also arose from express provider contracts. So, Community Care argues, if its counterclaim is dismissed, it is inequitable and inconsistent to allow the State's claim to go forward. We disagree.

The State's restitution claim is not barred by the provider contracts it entered into with Community Care under the injunctions, because the provider contracts incorporate the Medicaid regulations. Thus in that sense the reimbursement to Community Care actually exceeded the payment required by the contract to the extent the contract incorporated the regulations. Payments in excess of those required by a contract may be properly sought in a restitution action. *See, e.g., St. Mary's Med. Ctr.*, 624 N.E.2d at 941 (unjust enrichment results and an insurer may obtain restitution from an insured who is overpaid, paid mistakenly, or benefits from a mistaken payment for services by the insurer).

It was not error for the trial court to dismiss Community Care's counterclaim for restitution based on the contractual relationship between the State and Hamilton Heights while allowing the State's restitution action to go forward.

---

**7.** The trial courts in the other injunctions required the State to put into escrow the difference between the payments after the injunctions and the payments which would have been made with-out the injunctions. When the injunctions were reversed, the escrow accounts were automatically paid to the State.

**1244**

### CONCLUSION

The trial court did not err in determining that the State was entitled to summary judgment on its claim for restitution and in dismissing the Community Care unjust enrichment counterclaim. Community Care was unjustly enriched as a matter of law when its facilities subject to the Blackford injunction were reimbursed at rates greater than those the State would have been obligated to pay absent the injunctions, and the Hamilton Heights facility was unjustly enriched as a matter of law because it was reimbursed pursuant to the injunction at a rate which reflected its reasonable costs of operating its facility when the provider agreement and the governing statute permitted reimbursement at a lower rate.

The summary judgment for the State is affirmed.

DARDEN and RUCKER, JJ., concur.