**INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, et al., Appellants–Defendants,**

v.

**AMHEALTH (EVANSVILLE), INC., et al., Appellees–Plaintiffs.**

No. 49A05–0203–CV–117.

Court of Appeals of Indiana.

June 19, 2003.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants.

J. Michael Grubbs, Thomas F. Shea, Jody L. DeFord, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATTINGLY–MAY, Judge.

The Indiana Family and Social Services Administration ("FSSA") promulgated emergency rules changing Medicaid reimbursement formulas for nursing homes. A number of nursing homes and the Indiana Health Care Association (collectively, "Amhealth") challenged the rules, and the trial court entered a declaratory judgment in favor of Amhealth on the basis that FSSA had not properly adopted the emergency rules. It permanently enjoined FSSA from enforcing those rules and ordered FSSA to reprocess the nursing homes' claims submitted under the emergency rules. FSSA appeals,[1] raising a number of issues. We address two but find one dispositive: whether budget committee members had adequate notice of the emergency rulemaking and an opportunity to participate in the deliberations.

We reverse and remand.

### Is the Appeal Moot?

■ We address initially Amhealth's argument that this appeal is moot because the subject matter of the emergency rules challenged below has since been embodied in permanent rules that have been in effect since at least July 12, 2002. Even if we find the injunction was improper, Amhealth says, the decision would have no impact on Amhealth's Medicaid reimbursement. FSSA argues the appeal is not moot because it is entitled to relief if it wins this appeal—specifically, it will be entitled to restitution from the nursing homes for Medicaid overpayments made during the time the injunction was in effect.

Amhealth's argument that FSSA cannot seek reimbursement of overpayments made while the emergency rules were enjoined is based on the premise that while there may be a right to recover damages arising out of a wrongful injunction upon

---

1. We heard oral argument on March 7, 2003, at the Indiana University School of Law—Indianapolis. We thank the school for its hospitality and commend counsel on their capable advocacy.

Briefing in this case was stayed while our supreme court decided a similar challenge to emergency rules on pharmacy reimbursement, which rules were promulgated as part of the same process that produced the nursing home reimbursement rules at issue here. *IFSSA v. Walgreen,* 769 N.E.2d 158 (Ind. 2002). The *Walgreen* court decided the State followed proper rulemaking procedures in promulgating the emergency pharmacy rules. Those rules are now permanent.

reversal of a preliminary injunction, there is no such right upon reversal of a permanent injunction. This general rule is recognized in 42 Am.Jur.2d *Injunctions* § 337 (2000), where it is stated that the federal rules and the statutes of most states require an injunction bond, which "protects the enjoined party from damages or injustices caused by *hastily issued* orders of injunction[.]" (Emphasis supplied.)

The author observes that

a large portion of the cases involving claims on injunction bonds involves temporary restraining orders or temporary injunctions. Indeed, the federal rules require a bond only for restraining orders and preliminary injunctions, and state statutes often allow damages only for the wrongful issuance of temporary injunctions and not for permanent injunctions.

*Id.* However, that source also notes that under the principles of restitution, a party who obtains benefits from an improperly issued injunction has a duty to restore those benefits to those injured by the granting of the injunction. This remedy is "separate from the theory of malicious prosecution and in the absence of an injunction bond." *Id.* § 339.

We addressed this question in *Community Care Centers, Inc. v. Sullivan,* 701 N.E.2d 1234, 1240 (Ind.Ct.App.1998), *trans. denied* 726 N.E.2d 299 (Ind.1999). There, we determined the State could obtain restitution from nursing homes that were reimbursed at a higher rate than they would have been had the State's reimbursement formula not been enjoined to the extent it was. Community Care had obtained two injunctions, one in state court and one in federal court, to prevent the State's use of certain aspects of its nursing home reimbursement formula. The injunctions were reversed on appeal and the State brought an action for restitution.

The trial court determined on summary judgment that the State was entitled as a matter of law to recover "the difference between the sums paid to Community Care under the erroneous injunctions and the amounts it would have received under the State's lawful rate-setting methodology in the absence of the injunctions[,]" *id.* at 1238, and we affirmed.

We stated:

In situations like the one before us, where a valid government regulation or procedure has been enjoined and improper payments have been made pursuant to the subsequently reversed injunction, this type of "enrichment" in the form of improper payments has typically been characterized as unjust.

*Id.* at 1240.

One of the underlying injunctions in that case was preliminary and one was permanent, indicating the remedy of restitution is available regardless of the nature of the injunction that is subsequently reversed. Because FSSA is entitled to restitution from Amhealth for Medicaid overpayments made during the time the emergency rules were enjoined, we decline to hold that this appeal is moot.

### Were the Emergency Nursing Home Rules Properly Promulgated?

 When findings of fact and conclusions of law are entered by the trial court, as occurred here, we will not set aside the judgment unless it is clearly erroneous; that is, unless we are definitely and firmly convinced the trial court committed error. The findings must disclose a valid basis for the legal result reached in the judgment, and evidence at trial must support each of the specific findings. We defer to the trial court when such evidence conflicts. We will not reweigh the evidence nor reassess the credibility of the witnesses be-

fore the court. Rather, we will affirm if there is sufficient evidence of probative value to support the decision, viewing the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. To the extent that the judgment is based on erroneous findings, those findings are superfluous and are not fatal to the judgment if the remaining valid findings and conclusions support the judgment.

Conclusions of law, however, are reviewed *de novo*. A "clearly erroneous" judgment can result from application of the wrong legal standard to properly-found facts, and in that situation we do not defer to the trial court. We are not bound by the trial court's characterization of its results as "findings of fact" or "conclusions of law." Rather, we look past these labels to the substance of the judgment and will review a legal conclusion as such even if the judgment wrongly classifies it as a finding of fact. This court may affirm the judgment on any legal theory supported by the findings.

*AmRhein v. Eden*, 779 N.E.2d 1197, 1206 (Ind.Ct.App.2002) (citations and internal quotations omitted).

The trial court determined the regulations were not adopted in conformity with Public Law 291–2001 section 48 ("Section 48"), Ind.Code § 4–22–2–19.5, or Ind.Code § 12–15–21–12. FSSA asserts the case before us is controlled by the *Walgreen* decision, which held the State followed proper procedures in promulgating emergency pharmacy reimbursement rules, which were promulgated at the same time FSSA promulgated the emergency nursing home rules at issue here. Amhealth argues that even if the appeal is not moot, the

nursing home rule promulgation process differed enough from the prescription drug rulemaking process our supreme court approved in *Walgreen* that the process used to promulgate the nursing home rules was not proper even under the *Walgreen* standards.

## Section 48

During its 2001 session, the General Assembly promulgated Section 48, a non-code provision that gives the state budget director broad authority to cut Medicaid expenditures to match appropriated funds:

> Notwithstanding ... any other law, or any rule, if the budget director makes a determination at any time during either fiscal year of the biennium that Medicaid expenditures to date are at a level that may cause total expenditures for the year to exceed total Medicaid appropriations for the year, the budget director may, *after review by the budget committee,* direct the secretary to adopt emergency rules to the Medicaid program to decrease expenditures that have risen significantly to limit Medicaid expenditures to the Medicaid appropriations in this act. Adjustments under this subsection may not:
>
> (1) violate a provision of federal law; or
>
> (2) jeopardize the state's share of federal financial participation; applicable to the state appropriations contained in the biennial budget for Medicaid assistance and Medicaid administration.

(Emphasis supplied.) The legislature explicitly provided that this statute would supplant all others. Therefore, if the statute's provisions were met, the emergency rule would be valid. *Walgreen*, 769 N.E.2d at 164.[2]

---

**2.** Despite the legislature's language that Section 48 applies "Notwithstanding ... any other law, or any rule" and the *Walgreen* state-

ment that if the statute's provisions were met the emergency rule is valid, the trial court found the rule promulgation process also vio-

In the *Walgreen* rule promulgation process, the FSSA director testified with regard to the pharmacy reimbursement rules that she presented the budget committee with a summary of all pending cost containment rules and advised the committee members of the likelihood of emergency action. The committee members listened to the information and asked questions, and there was discussion among the members of the budget committee about the dispensing fee and reimbursement rate reductions that were the subject of the emergency pharmacy rules. The director also gave budget committee members a handout summarizing the status of Medicaid cost containment proposals.

The *Walgreen* court noted that the director told the committee about the specifics and urgency of the anticipated measures, and committee members had an opportunity to express their views. This, the court held, appears to comply with the straightforward language of the statute:

> [Section 48] assures budget committee members advance notice of agency actions and creates an opportunity for the members to participate in the deliberations. It does not, however, condition FSSA's authority to act on approval by

the committee, as certain other statutes do.

*Id.* at 165.

■ The trial court in the case before us did not, of course, have before it the *Walgreen* standard for "review by the budget committee." It noted that Section 48 does not define "review." It therefore relied on the word's common and ordinary meaning and concluded there was no review because 1) the budget committee had never been given a copy of the rules, 2) it had not been given any report, account, or evaluation of the changes in nursing home reimbursement methods the rules would effect, and 3) there was no consideration or deliberation whatsoever by the committee.

The trial court found that the committee was not given a copy of the emergency rules to examine but was instead given two handouts. The first was a one-page document, one paragraph of which states that a proposed permanent "case-mix" reimbursement rule would be published on July 1, 2001, but that does not describe the changes in reimbursement rates under the rule. (App. to Br. of Appellants at 14.)

The FSSA director testified that she merely handed the document to the budget committee members and that there was no discussion of the nursing home rules.[3]

---

lated Ind.Code § 4–22–2–19.5 and Ind.Code § 12–15–21–12. Because compliance with Section 48 is dispositive as to the question whether the emergency nursing home rules were properly promulgated, we do not address whether the *requirements* of Ind.Code §§ 4–22–2–19.5 and 12–15–21–12 were satisfied. Nor need we address FSSA's alternative argument that Ind.Code § 12–8–1–12(c) provides independent authority for the emergency rules.

**3.** FSSA asserts "[t]he evidence shows, *and the trial court found,* that [the FSSA director] presented a Medicaid update at the June 22, 2001, meeting of the budget committee." (Br. of Appellants at 11) (emphasis supplied). FSSA does not explain what the "Medicaid

update" amounted to, and the portion of the record to which FSSA directs us does not support that statement. That trial court finding states that

> the Emergency Rules were not mentioned in either the agenda or the minutes of the June 22, 2001 meeting ... the members of the Budget Committee were not given copies of the Emergency Rules or a summary of the material changes caused by the Emergency Rules either before, during, or after the meeting ... [the director] did not discuss the Emergency Rules during her presentation on the Medicaid budget, and ... there was no discussion of the Emergency Rules by the Budget Committee.

(App. to Br. of Appellants at 13.)

While the handouts addressed in the *Walgreen* case contained information about the *pharmacy* rules and the State's intention to adopt them on an emergency basis, they do not indicate what the proposed *nursing home* reimbursement rules consist of, and they merely suggest that emergency rulemaking is contemplated. For example, the handout indicated a public hearing date, and then stated, "Due to requirements under federal law to provide 45 days prior notice of reimbursement changes for nursing homes the earliest implementation date, using emergency rulemaking authority, would be September 2001." (*Id.* at 35.)

FSSA does not explicitly argue that the budget committee could have "reviewed" the proposed rules when it had never been told what those rules were. Rather, it asserts the requisite review occurred by virtue of the director's "Medicaid update," the handouts she distributed, and the budget committee members' awareness "for some time that the Medicaid director predicted a budget shortfall, that the agency anticipated adopting emergency rules, and that some of the rules would pertain to nursing facility reimbursement." (Br. of Appellants at 12.)

Amhealth notes that in *Walgreen*, the committee had been given a handout that included all of the pharmacy rules; the committee was advised that emergency action was likely; it listened to the director's information and asked questions; and there was discussion of the pharmacy rules among members of the committee. So, it argues, the "review" that was adequate in the *Walgreen* case did not occur with regard to the nursing home rules in the case before us.

While the budget committee "review" of the nursing home reimbursement rules was minimal at best, it satisfied the standard articulated in *Walgreen*. The budget committee was made aware that, as a result of the budget shortfall, the agency anticipated adopting emergency rules some of which would pertain to nursing facility reimbursement. Its members could have commented on or discussed the proposed nursing home rules at the same meeting where they discussed the proposed pharmacy rules. Adequate "review" under the *Walgreen* standard does not explicitly require that the budget committee be aware of the content of the proposed rule but only that it have "advance notice of agency actions." *Walgreen*, 769 N.E.2d at 165. Nor does it require actual discussion, but only "an opportunity for the members to participate in the deliberations." *Id.* The trial court therefore erred when it determined the proposed emergency rules did not receive budget committee "review" as required by Section 48.

## CONCLUSION

The appeal before us is not moot, as the FSSA might be entitled to restitution for overpayments it made to Amhealth while the emergency rules were enjoined. The emergency rules were properly promulgated under the *Walgreen* standard and we reverse the trial court's determination that the regulations were not adopted in conformity with Section 48. We remand to the trial court for a determination in what amount FSSA is entitled to restitution.

Reversed and remanded.

FRIEDLANDER, J., concurs.

BROOK, C.J., concurs in result with separate opinion.

BROOK, Chief Judge, concurring.

I concur in the majority's reversal of the trial court's judgment for Amhealth. I write separately, however, to clarify the distinction between a legal claim of damages premised on a wrongfully issued tem-

porary injunction and an equitable claim of restitution.

Amhealth correctly contends that FSSA can only recover legal damages resulting from the wrongful issuance of a temporary injunction but not from the wrongful issuance of a permanent injunction. *See, e.g., Harless v. Consumers' Gas Trust Co.*, 14 Ind.App. 545, 43 N.E. 456 (1896). In the instant case, however, were we to determine that the trial court wrongfully issued its permanent injunction, FSSA could nevertheless seek restitution from Amhealth, and the nature of the injunction at issue would be irrelevant. *See Community Care Centers v. Sullivan*, 701 N.E.2d 1234 (Ind.Ct.App.1998) (concluding that FSSA could seek restitution from appellant based on two wrongfully issued injunctions, one permanent and the other temporary), *trans. denied* (1999).

> Restitution is described as a return or restoration of what the defendant has gained in a transaction. As distinct from damages, restitution is an award made to remedy defendant's unjust enrichment rather than plaintiff's loss. Stated differently, restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain.

*Rollings v. Smith*, 716 N.E.2d 502, 507 (Ind.Ct.App.1999) (citations and quotation marks omitted). Thus, FSSA's appeal is not moot because it could seek restitution if we determine that the trial court wrongfully issued its permanent injunction.