INDIANA FAMILY AND SOCIAL SER-VICES ADMINISTRATION, Jeff Richardson, Administrator, Division of Family and Children, Suzanne Turner, Director, Office of Medicaid Planning and Policy, James Verdier, Secretary, Appellants–Defendants,

v.

HOSPITALITY HOUSE OF BEDFORD, Appellee–Plaintiff.

No. 49A05–9712–CV–506.

Court of Appeals of Indiana.

Dec. 30, 1998.

Jeffrey A. Modisett, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Beth H. Henkel, Deputy Attorney General, Indianapolis, for Appellants–Defendants.

Randall R. Fearnow, Alastair J. Warr, Paul (Rick) Rauch, McNamar Fearnow & McSharar, P.C., Indianapolis, for Appellee–Plaintiff.

## OPINION

FRIEDLANDER, Judge.

Indiana Family and Social Services Administration, Jeff Richardson, Administrator; the Division of Family and Children, Suzanne Turner, Director; and the Office of Medicaid Planning and Policy, James Verdier, Secretary (collectively FSSA),[1] appeal the denial of their Ind. Trial Rule 60(B) motion for relief from a judgment rendered in favor of Hospitality House of Bedford (HH). HH is a Medicaid certified nursing facility in Lawrence County, Indiana. As restated, this appeal presents the following issues for review:

1. Over the course of the litigation in the present case, the agency in charge of Medicaid reimbursement has changed from the Department of Public Welfare to FSSA. When the agency was renamed, the court granted permission to substitute the newly created FSSA and various divisions, directors, and secretaries for the original respondents. For ease of reference, the agency will be referred to as FSSA throughout this decision.

1. Did the trial court exceed its jurisdiction in the 1992 judgment by formulating an order with prospective application, and what effect should be given to HH's assertions of laches and res judicata?

2. Did changes in the Medicaid reimbursement regulations require alterations to the prospective judgment?

We reverse and remand.

The history of this protracted case includes *inter alia* a previous appeal to this court, *see Scales v. Hospitality House of Bedford*, 593 N.E.2d 1283 (Ind.Ct.App.1992), resulting in reversal and remand, a judgment in December 1992 in favor of HH, dismissal of FSSA's appeal of the 1992 order for failure to timely perfect the appeal, enforcement requests and agreed entries, a request for relief from the 1992 judgment upon which this appeal is based, and a motion for relief directed to this court after the current appeal was perfected.

■ Initially, it should be noted that Medicaid is a voluntary, cooperative program designed by Congress. *Indiana State Bd. v. Tioga Pines*, 637 N.E.2d 1306 (Ind.Ct.App. 1994). The program provides financial assistance to participating states to defray the medical costs related to care of the needy. *Id.* Although the program is voluntary, once a state chooses to participate, it must comply with all federal Medicaid laws and regulations. *Department of Pub. Welfare v. Lifelines of Indianapolis*, 637 N.E.2d 1349 (Ind. Ct.App.1994), citing *Lett v. Magnant*, 965 F.2d 251, 252 (7th Cir.1992). The Medicaid laws in effect at the time of the 1992 judgment required states to devise a plan in compliance with what was commonly referred to as the Boren Amendment.

To qualify for assistance, a state must devise a scheme for reimbursing health care providers and have that plan approved by the Secretary of Health & Human Services. Presently, the state plan must comply with Section 1902(a)(13) of the Medicaid Act, 42 U.S.C. § 1396a(a)(13)(A) as amended by the Omnibus Budget Reconciliation Act of 1980, Pub.L. 96–499, § 962(a), 94 Stat. 2650 (1980), the revision now commonly referred to as the Boren Amendment. *Department of Pub.Welfare*, 637 N.E.2d at 1351.

HH has a special wing which provides nursing care and active treatment to severely and profoundly mentally retarded residents. As found in the first decision in this case, *Scales*, 593 N.E.2d 1283, and in the order from which FSSA currently appeals, *see infra*, the costs of care for the mentally retarded residents exceeds the costs of care for those residents in traditional nursing facilities.[2]

The case began in November 1989, when HH requested state agency review seeking a special Medicaid reimbursement rate due to the extraordinary costs it was mandated to incur by federal Medicaid laws when the State Department of Health began enforcing "active treatment" requirements for all mentally retarded pediatric[3] residents. *See* 470

---

**2.** At the time of the decision in *Scales*, one assertion was that there were not readily available facilities which could accommodate the severely and profoundly retarded residents at HH. At the time of this appeal, a few facilities exist but their continued viability is at risk. FSSA notes that if HH cannot remain financially viable after moving to the new reimbursement system, the patients could be transferred to the other facilities. The trial court expressed concern that other facilities are locked in litigation with FSSA regarding reimbursement rates as well. One of the facilities is New Horizons which has reimbursement litigation pending with FSSA. *See Family and Social Serv. v. Community Care*, 641 N.E.2d 1012 (Ind.Ct.App.1994) *trans. granted,* decision vacated by *Family and Social Serv. v. Community Care*, 688 N.E.2d 1250 (Ind.1997) (action brought as injunction to halt FSSA's efforts to collect alleged overpayments in part by stopping legitimate payments to New Horizon for care of

mentally retarded patients; appeal dismissed in part for mootness and injunction vacated in remainder by Supreme Court). In a recent decision, *Community Care v. Sullivan*, 701 N.E.2d 1234 (Ind.Ct.App. 1998), this court addressed the reversal of injunctions issued by state and federal district courts which had halted implementation of two Medicaid reimbursement "limiters." *See Ind. Bd. of Pub. Welfare v. Tioga Pines*, 622 N.E.2d 935 (Ind.1993); *Lett*, 965 F.2d 251. This court noted the allegations of operating losses incurred by Community Care's New Horizons facility. *Community Care v. Sullivan*, 701 N.E.2d at 1240. Also, the trial court's judgment in this action specifically notes that another facility, Vernon Manor, presented evidence that it is operating at a loss.

**3.** It is suggested that many of the severely and profoundly retarded residents became patients of

IAC § 5–4.1–6(d) (allowing separate and distinct rate review due to an increase in services mandated by changes in federal or state law or regulation during a calendar year, which became 405 IAC § 1–14–6 effective in 1994,[4] then 405 IAC § 1–14.1–6); *see also* 42 C.F.R. § 483.440 (setting requirement for "active treatment" of mentally retarded patients). Although an administrative law judge found in favor of HH, review by FSSA resulted in rejection of HH's request for enhanced reimbursement.

HH pursued administrative remedies and was awarded a favorable decision by the trial court in 1992. FSSA failed to appeal the 1992 decision. After emergency petitions for enforcement by HH which resulted in agreed entries by the parties, in October 1996 FSSA filed a T.R. 60(B)(7) motion for relief from the 1992 judgment. In its order denying the motion for relief, the trial court reviewed the procedural history of the case. Excluding the formal portions, the order provides:

1. On December 15, 1992, this Court entered Findings of Fact, Conclusions of Law and an Order on judicial review in this case in favor of the Petitioner, Hospitality House of Bedford.... The Court's Judgment recognized various inadequacies in Medicaid reimbursement for the care of certain residents of a special unit for the mentally retarded located within [HH's] skilled nursing facility. The Court approved six (6) findings made earlier in the case by an Administrative Law Judge and ordered the retroactive and prospective relief requested by [HH].

2. [FSSA] sought to appeal this Court's December 15, 1992 Order (hereinafter the "Order") to the Indiana Court of Appeals by filing a praecipe. However, [FSSA] failed to perfect [its] appeal in a timely manner and the Court of Appeals denied [FSSA's] verified petition seeking a belated appeal.

3. On June 20, 1994, in the course of previous efforts by [HH] to enforce the

Order, the parties entered into an Agreed Entry which was approved and so ordered by this Court. In the Agreed Entry, the following language was approved:

10. The parties agree that contemplated changes in the way [FSSA] reimburse[s] Medicaid certified nursing facilities may conflict with the order to pay $107.00 per patient per day. This court shall retain jurisdiction to resolve any future disputes between the parties related to compliance with the court's Order either before or after the effective date of any changes in the Medicaid reimbursement system. The parties agree to attempt to settle any disputes over the application of this order to any changes in [FSSA's] reimbursement system through negotiation if possible.

The parties further agreed in paragraph 14 of the Agreed Entry as follows:

14. All future questions related to interpretation of this agreement or any previous order of this Court or compliance therewith shall remain subject to this court's jurisdiction to fashion appropriate remedies and to supervise compliance by the parties. [References to the Record omitted].

4. On July 25, 1994, [HH's] counsel corresponded with Deputy Attorney General Jon Laramore. The correspondence anticipated changes in the way in which Medicaid providers were to be reimbursed and invited Mr. Laramore to address the issue of therapy and supply reimbursement in compliance with the Order. The correspondence reads in part as follows:

... in the June 24, 1994 Agreed Entry ... [t]he parties agreed to attempt to settle any disputes over the application of [the Order] to any changes in the reimbursement system. We would like to begin this process as soon as possible. If a reimbursement system takes effect August 1, 1994 eliminating payments to

---

HH while they were quite young and have now grown up in the facility. There is no reasonable likelihood that they would function in a less-restrictive environment. Although FSSA suggests that a minority of the pediatric wing patients are children, no challenge is raised in the appeal as to consequences of the residents' ages.

4. An interim reimbursement methodology commonly referred to as Rule 4.2 was to take effect in 1991, but was preliminarily enjoined and never implemented.

the facility for therapy supplies, the facility will lose approximately $45.00 per patient per [day] in revenue. Such a change in reimbursement would conflict with [the Order] that the facility be paid a reasonable and adequate amount for the care of the pediatric residents and would require the facility to pursue further enforcement efforts in the absence of an agreement. I am interested in any thoughts you may have on this subject and as to whether your clients have discussed with you any proposal you are free to discuss with us. I look forward to hearing from you in this regard. August 1 is just around the corner.

5. [FSSA] did not reply to the above request and instead acquiesced without complaint in the reimbursement of [HH] for medical supplies at 150% of actual cost and therapies at 125% of cost. This compliance continued until September of 1996 when Respondents unilaterally stopped reimbursing Petitioner separately for supplies and therapies.

6. On October 18, 1996, [HH] filed a Verified Petition for Emergency Enforcement of Court Order. This was the second such petition [HH] had been required to file in this case and it was resolved in a similar fashion, through the execution of a second Agreed Entry on December 13, 1996. In the second Agreed Entry, [FSSA] agreed to resume reimbursement of medical supplies at 150% of costs and therapies at either 125% of costs or at the therapy rate established for [HH] prior to August 1, 1994. [FSSA] also retained specifically their right to suspend or deny any of [HH's] claims in accordance with rules pertaining to medical necessity, adequate documentation and utilization control, and to perform an audit of any of [HH's] claims in accordance with applicable rules.

7. On October 25, 1996, [FSSA] filed a "Motion to Vacate, Clarify or Modify Injunction" pursuant to Ind.Trial Rule 60(B)(7). The motion alleged, inter alia, that changes had occurred in the State's Medicaid reimbursement methodology and applicable laws constituting changed circumstances justifying a modification of the Order. [FSSA] insist[s] the Order is actually an injunction which, because of changed circumstances, has become an "instrument of wrong."

8. The Order relied in part on the following authorities:

(a) 42 U.S.C. § 1396a(a)(13)(A), the federal "Boren Amendment" to the Social Security Act;

(b) Ind.Code 12–1–7–17.6(b), the Indiana counterpart to the "Boren Amendment" now found at Ind.Code 12–15–14–2;

(c) 42 C.F.R. § 483.440, a federal regulation requiring nursing facilities to conduct "active treatment" for mentally retarded residents; and

(d) 470 IAC 5–4.1–6(d), a state administrative code provision allowing for increases in Medicaid rates when additional costs are incurred as a result of mandated changes in federal or state laws.

9. On January 6, 1997, [HH] filed a Motion To Dismiss Respondents' Motion For Relief From Judgment.

10. On May 20, 1997, this Court held a hearing on both Motions. The Court *sua sponte* ordered counsel for both parties to submit Proposed Findings of Fact, Conclusions of Law, and Order.

11. Rule 14 (405 Indiana Administrative Code 1–14) was enacted on August 1, 1994, and Rule 14.1 (405 IAC 1–14. 1) became effective on February 15, 1995.

12. As of October 25, 1996, the date [FSSA] filed [its] Motion To Vacate, Clarify or Modify Injunction, it was twenty (20) months since current Medicaid reimbursement Rule 14.1 became effective, nearly twenty-seven (27) months after Rule 14, a previous Medicaid reimbursement regulation, was promulgated, twenty-eight (28) months after the first Agreed Entry was filed in this case, and almost four (4) years after entry of the Order.

13. This Court previously found it would be "more expensive" to care for the pediatric residents in an alternative setting. See original Finding of Fact No. 6 and Administrative Law Judge Finding of Fact Paragraph 4. [FSSA] presented no evidence at the time of the hearing on the Rule 60(B)(7) motion of any comparable

alternative placements for the [HH] residents, with the possible exception of Vernon Manor Children's facility in Wabash, Indiana. The evidence showed, however, that Vernon Manor has incurred more than $1.1 million in operating losses in the last three years.

14. Any Finding of Fact more appropriately deemed a Conclusion of Law shall be deemed a Conclusion of Law.

## II. *Conclusions of Law*

1. This Court retains jurisdiction to resolve this dispute pursuant to Indiana administrative and statutory law, and pursuant to the Agreed Entry between the parties dated June 20, 1994.

2. [FSSA has] the burden of proving entitlement to relief under T.R. 60(B), and that the motion is timely filed. *Summit Account & Computer v. Hogge,* 608 N.E.2d 1003, 1005 (Ind.App.1993). The reasonable time requirement is the only limitation on a motion under T.R. 60(B)(7) or (8). *See generally* language of T.R. 60(B) and *Showalter v. Brubaker,* 650 N.E.2d 693, 698 (Ind.Ct.App.1995).

3. T.R. 60(B)(7) allows only motions filed within a reasonable time. T.R. 60(E) specifically disallows a governmental organization from tolling or extending the time for requesting relief under the rule. The Doctrine of Laches bars any T.R. 60(B)(7) motion not brought within a reasonable time.

4. [FSSA] neither bring[s] the Motion for Relief within a reasonable amount of time, nor establish[es] a fact or event which occurred within a "reasonable time" justifying [its] request for relief. [FSSA's] Motion is not filed timely.

5. Since [FSSA] entered into the June 20, 1994 and December 13, 1996 Agreed Entries, they "must establish that a significant change in fact or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 393, 112 S.Ct. 748, 765, 116 L.Ed.2d 867 (1992).

6. This Court exercises flexibility in considering requests for modification of a consent decree, but a modification will not be warranted in all circumstances. The party seeking modification bears the burden of establishing a significant change in circumstances warranting revision. Modification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous. *Id.* at 384, 112 S.Ct. 748.

7. No significant change in circumstances occurred since either Agreed Entry was signed. [FSSA] claim[s] the implementation of Rule 14.1 provides a significant change in circumstances which provides a reason to modify the entry. However, since [FSSA] has been complying with the entry for the three (3) interim years, and no change has occurred recently, compliance is not substantially more onerous.

8. Modification should not be granted where a party relies upon what actually was anticipated at the time it entered into the decree. *Id.* at 586. [FSSA] claims in a footnote some of the features of Rule 14.1 actually make the reimbursement rate which [HH] would have been assigned more generous than Rule 4. 1, and seems to infer [HH's] Medicaid reimbursement rate may be higher under Rule 14.1. No evidence exists to corroborate this belief. Substantial evidence exists to the contrary *(Affidavit of Rosacker,* [Paragraph]12 and *Affidavit of Wayne S. Tush,* [Paragraphs 3–4] ).

9. The original December 15, 1992 Order determined the existing Rule 4.1 inadequately reimbursed [HH] for the care of its mentally retarded residents; no convincing evidence exists or was presented to infer Rule 14.1 would in any manner improve this situation.

10. When [FSSA] entered into the June 20, 1994 Agreed Entry, it certainly knew Rule 14 would be promulgated and approved on August 1, 1994; if they claim they did not know, [HH's] Counsel's July 25, 1994 correspondence should have alerted them.

11. Since [FSSA] entered the June 20, 1994 Agreed Entry knowing Rule 14 would be promulgated shortly thereafter, [FSSA has] not satisfied the heavy burden of convincing this court it should now be granted relief from this undertaking pursuant to T.R. 60(B)(7).

12. A motion brought pursuant to T.R. 60(B) may not attack the substantive, legal merits of the judgment; rather, the motion may only address the procedural, equitable grounds justifying relief from the finality of the judgment. *Matter of R.R.,* 587 N.E.2d 1341, 1343 (Ind.Ct.App.1992). The burden is upon the movant to demonstrate affirmatively that relief is necessary and just. *Langdon v. Langdon,* 641 N.E.2d 673, 674 (Ind.Ct.App.1994) and *Matter of R.R.,* 587 N.E.2d at 1343. Under T.R. 60(B), a party seeking relief from judgment must affirmatively demonstrate that its failure to act was not merely due to an omission involving mistake, surprise, or excusable neglect, but was the result of some exceptional circumstance justifying extraordinary relief. *Greengard v. Indiana Lawrence Bank,* 556 N.E.2d 1373 (Ind.Ct.App.1990).

13. [FSSA has] failed to establish exceptional circumstances, a grievous wrong, or new and unforeseen conditions as a necessary basis for receiving relief under T.R. 60(B)(7).

14. The controlling statutes and rules supporting the Order have not changed substantively, or at all, since December 15, 1992. Nor did the Court rely in its Order on any judgment or case which has since been reversed or vacated.

15. The reimbursement system now in effect does not alleviate any of the problems identified by this Court in the Order. The reimbursement inadequacies are in fact worse now than before. Consequently, the underlying conditions do not work to moot or limit the adequacy of the Order, or the necessity of either of the Consent Decrees entered following the Order. These decrees should therefore not be modified under rules set forth by the United States Supreme Court. *Rufo,* 502 U.S. at 393, 112 S.Ct. 748.

16. [FSSA] specifically retained the right to audit [HH] for compliance with medical necessity, adequacy of documentation, utilization control and other regulations. Despite [FSSA] having conducted extensive audits of [HH] throughout the time this case has been pending, and more recently since the filing of the Rule 60(B) motion, [HH has] produced no evidence demonstrating the invalidity of even a single claim submitted by [HH] throughout this entire time. [FSSA] was unable to uncover any such evidence despite subjecting [HH], since October, 1996, to extraordinary audits, reviews, and inspections by at least seven state employees and contractors.

17. [FSSA's] previous reimbursement regulation, Rule 4.1, was not the basis of the Order. The basis of the Order was proof of inadequacy of reimbursement to [HH], and the resulting inability of [HH] to provide adequate care to its fragile and dependent mentally retarded residents. No changed circumstance alleviating the necessity of the Order has been cited by [FSSA]. There is nothing inequitable about the continued prospective application of the Court's Order because [FSSA] presented no proof the reimbursement system has been improved. The evidence in fact has shown to the contrary that [HH] would be even worse off under Rule 14.1 than under Rule 4. 1, the reimbursement rule existing at the time of the Order. Similarly, *no evidence exists to show [HH's]* residents would be any better off under the new rule.

18. No legal or equitable reason exists to alter the status quo requiring reimbursement for therapies and supplies above [HH's] actual cost. The evidence suggests the enhanced reimbursement for therapies and supplies makes up for other deficiencies in [HH's] reimbursement. [FSSA has] produced no alternative single per diem calculation designed to reimburse [HH] for the costs it must incur. Rather than calculate a single per diem rate in compliance with the Order, [FSSA] calculated instead a single per diem rate [it] would prefer to pay in compliance with their new reimbursement methodology.

19. [FSSA claims] [HH] has joined in the request for modification of the Order. The record indicates otherwise. In its Verified Petition for Enforcement of the Order, [HH] asked the Court to "enter an Order further clarifying and interpreting the Court's previous order in light of changes in the Respondent's reimbursement system which have resulted in a diminution of

payments to the Petitioner in violation of the intent of this Court's previous orders." This cannot be viewed as a request for a Rule 60(B) modification, but rather is in furtherance of [HH's] efforts to enforce the Order. [FSSA] must do equity if [it is] to receive equity. It is not appropriate for [FSSA] to refuse to comply with the Order and then attempt to use [HH's] enforcement efforts as a basis for revival of an untimely Rule 60(B)(7) motion.

20. [FSSA] failed to show [HH's] continued claims for reimbursement of therapies and supplies were anything other than candid and forthright. [FSSA has] failed to establish any element of subterfuge in the continued billings. These billings were submitted with the full knowledge of [FSSA's] counsel and were accompanied monthly by unambiguous notices to [FSSA] that the billings were in furtherance of and in reliance on the Order.

21. A T.R. 60 motion is not a substitute for a direct appeal, and it does not extend the time limitations for filing a T.R. 59 motion. *Fairrow v. Fairrow*, 559 N.E.2d 597, 598 (Ind.1990). "Further, the [T.R. 60(B) ] motion may not be used as a substitute for a timely direct appeal or to revive an expired attempt to appeal." *Matter of R.R.*, 587 N.E.2d at 1343, and *Scheetz v. Scheetz*, 509 N.E.2d 840, 845 (Ind.Ct.App. 1987), *reh. den.* Indiana law forbids [FSSA] from utilizing T.R. 60(B) in the manner attempted here. "It is firmly established a motion for relief from judgment ... [cannot] be employed to revive an expired attempt to appeal." *Mathis v. Morehouse*, 433 N.E.2d 814, 815 (Ind.Ct.App.1982), *reh. den.* [footnote omitted]. "T.R. 60 is not a vehicle to avoid normal appeal procedures. [Movant], not having been diligent in pursuing error that could have been subject of a timely appeal ..., may not use T.R. 60 to revive an expired remedy (citations omitted)." *Moe v. Koe*, 165 Ind.App. 98, 330 N.E.2d 761, 765 (1975).

22. Because legal issues raised here were required to have been raised on direct appeal, the issues are *res judicata*, and the request for relief from the judgment as to those issues must fail.

23. [FSSA has] been required by our appellate courts to reimburse nursing facility providers for the care of the mentally retarded where alternative services are not available. *Family and Social [Serv.] v. Calvert*, 672 N.E.2d 488 (Ind.Ct.App.1996). [FSSA] made no showing as to how [HH's] residents will be cared for if not at [HH].

24. In *Calvert*, the Indiana Court of Appeals determined if Indiana law provides health care must be provided to a person qualified for Medicaid coverage, the State is obligated to pay for said services. [HH] proved in its case before the Administrative Law Judge and this Court that any alternative placements for [HH's] mentally retarded residents, such as Muscatatuck State Hospital from where many of the residents were transferred, or any existing eight bed group homes, would cost more than the combined per diem and therapy charges billed by [HH]. [FSSA's] claim [it is] representing the "public interest" by filing [its] request for relief from judgment is disingenuous.

25. The public interest, and that of this court, is to foster the best care for the residents at [HH]. If [HH] is not reimbursed adequately for their efforts (thus violating *Calvert* ), [HH] will be forced to discharge the residents. The public interest is not served by this scenario in which fragile, dependent residents would be discharged from a place at which they are comfortable and well cared for, to a State or other institution at which they may be provided inadequate care at a greater cost to the taxpayers. The result urged by [FSSA] is bad public policy, unsupported by the courts or the legislature.

26. [FSSA's] argument would be more cogent and logical if Rule 14. 1, when promulgated, placed [HH] in a category outside the actual reimbursement system or enhanced [HH's] ability to recover costs incurred in treating this special group of residents. This would lend support to an argument that since Rule 4.1 was inadequate, but was later changed to accommodate the needs of [HH's] mentally retarded residents, Rule 60(B) relief may be appropriate because a sufficient change of circumstances occurred. Under [FSSA's] argument however, any minute change in the Medicaid reimbursement system, even one

which exacerbates the problems identified by this Court, would allow [FSSA] to request and presumably gain T.R. 60(B) relief. This would allow [FSSA] to frustrate judicial review of any reimbursement action, and cannot be allowed to occur.

27. Any Conclusion of Law more appropriately deemed a Finding of Fact shall be deemed a Finding of Fact.

### III. *Order.*

WHEREFORE, this Court having reviewed the written briefs and other materials submitted by the parties, having heard oral argument from counsel of record and being duly advised in the premises enters the following:

1. No basis has been shown in law or equity which provides sufficient grounds to grant [FSSA's] T.R. 60(B) Motion to Vacate, Clarify, or Modify the Order.

2. [FSSA's] October 25, 1996 Motion under T.R. 60(B)(7) to Vacate, Clarify, or Modify the Court's Order is **DENIED.**

3. [FSSA is] ordered to maintain reimbursements to [HH] in compliance with the Order and the December 13, 1996 Agreed Entry setting forth the continuation of separate reimbursements for therapies and medical supplies.

4. The Court having disposed of [FSSA's] motion on its merits, [HH's] Motion to Dismiss is therefore **MOOT.**

*Record* at 2229–39. This appeal ensued.

On July 21, 1998, after this appeal was fully briefed, FSSA filed a motion entitled "Second Motion For Relief From Judgment Under Trial Rule 60(B)." Second Motion. On the same day, FSSA filed a Request for Conference.

The Second Motion notes Congressional repeal in 1997, and the Indiana legislature's repeal in March 1998, of Medicaid provisions setting substantive standards for the adequacy of Medicaid reimbursement rates. FSSA also asserts that it has adopted final rules which will completely revise Medicaid reimbursement on a "case mix" basis. FSSA expected the rules to become effective in October 1998. FSSA alleges that the new rules would "completely eliminate the legal basis for the prospective effect of the 1992 judgment". Second Motion at 3.

 On July 23, 1998, HH filed its motion to strike the Second Motion. It relies upon case law, *Logal v. Cruse,* 267 Ind. 83, 368 N.E.2d 235 (1977), noting that FSSA failed to follow the proper procedure for filing a T.R. 60(B) motion at the appellate level. In *Logal,* the supreme court adopted a procedure for filing motions for relief from a judgment while an appeal is pending. The motion should be preceded by an application to the appellate court for leave to file the motion, and the motion should be verified.[5]

On July 28, 1998, FSSA filed its motion in opposition to the motion to strike and renewed its request for a conference. FSSA also filed a verification of the Second Motion. Following *Logal,* FSSA's second motion is denied on procedural grounds. The request for a conference is also denied. We turn now to the issues raised in the appeal.

### 1.

 FSSA contends that the trial court exceeded its authority by ordering a prospective judgment. FSSA directs this court to the statutory procedures for review of an agency decision. Ind.Code Ann. §§ 4–21.5–5–1 through 4–21.5–5–16. A court reviewing an administrative agency's decision is limited to a finding whether the decision is supported by substantial evidence, whether it was arbitrary and capricious, and whether it was in contravention of constitutional, statutory, or legal principles. *Shoot v. State*

---

**5.** If the procedural requisites are met, the appellate court should make a preliminary determination on the merits as to whether, accepting the specific, nonconclusory factual allegations of the proponent, there is a substantial likelihood that the trial court would grant relief. If the motion has sufficient merit, the appellate court should remand the entire case to the trial court for plenary action. The remand terminates the proceedings at the appellate court level, and costs are taxed against the party procuring the remand. The remand does not require the trial court to grant the motion. If the motion is denied, that denial may be appealed. *Id.* If the trial court grants the motion for relief, the opposing party may appeal. The original appeal is moot. *Id.* If the appellate court does not find sufficient basis on the merits for remand, the ruling can be assigned as a ground for remand and, where appropriate, transfer. *Id.* Here, the procedural requisites were not met which would trigger the review outlined in *Logal.*

*Family & Social Servs. Admin.*, 691 N.E.2d 1290 (Ind.Ct.App.1998). A trial court may: set aside an agency action and:

(1) remand the case to the agency for further proceedings; or

(2) compel agency action that has been unreasonably delayed or unlawfully withheld.

IC § 4–21.5–5–15.

The 1992 judgment found the agency action arbitrary and capricious and that the agency's actions were unreasonable and contrary to law; specifically with regard to the regulation which allows providers to request additional reimbursement for extraordinary expenses incurred due to state and federal requirements. In sum, the court noted that, based on its findings and the mechanism for reviewing agency decisions, it could either remand for further proceedings or compel the agency to take action which has been unlawfully withheld. Given the findings of unreasonable, lengthy, and continuing delay by the agency, the court compelled action.

■ FSSA baldly asserts that a prospective judgment violates the procedural statutes. On the contrary, nothing within the statutes proscribes the trial court's issuance of a judgment which addresses the past and future conduct of the parties.

A finding that the trial court could compel retroactive and prospective action does not complete the inquiry. Two other factors demand additional analysis, *i.e.*, (1) FSSA's failure to appeal the 1992 judgment, and (2) the order's injunctive nature, with the attendant findings in the order and in subsequent agreed entries allowing the trial court to retain jurisdiction to alter the order as necessary.

Distilled to its essence, FSSA contends that a prospective judgment can always be modified when the underlying law changes. *See Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). HH views the appeal strictly as a T.R. 60(B) question. It casts the appeal as an attempt to circumvent this court's dismissal of FSSA's appeal of the 1992 order. HH contends that FSSA's action is barred by laches and res judicata. HH asserts, and the trial court found in its denial of the T.R. 60(B) motion, that the rule changes upon which

FSSA relies did not significantly alter the reimbursement format. Since this appeal was filed, however, federal and state laws and regulations have been repealed and the newly proposed regulations would totally restructure reimbursement formulae.

HH contends that this court should not reach the merits because FSSA failed to perfect an appeal of the trial court's order, and that FSSA cannot resurrect its appeal through a T.R. 60(B) motion. HH argues that if the original judgment was incorrect, as FSSA maintains, the proper avenue was to timely appeal. Having lost that opportunity, FSSA cannot now launch a collateral attack. In addition, HH contends that the 1992 judgment is res judicata and that the doctrine of laches would bar a request for relief from the judgment.

In pertinent part, T.R. 60 provides:

(B) On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

(7) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;

\* \* \* \* \*

The motion shall be filed within a reasonable time for reasons (5), (6), (7). . . .

\* \* \* \* \*

(E) Except as otherwise provided herein, this rule shall apply to infants, incompetents, and governmental organizations. The time for seeking relief against a judgment, order or proceeding allowed or recognized under subdivision (B) of this rule or any other statute shall not be tolled or extended as to such persons.

■ The entry of a judgment on a T.R. 60(B) motion is reviewed for an abuse of discretion. *Summit Account & Computer v. Hogge*, 608 N.E.2d 1003 (Ind.Ct.App.1993). T.R. 60(B) does not provide a substitute for direct appeal. *Mickle v. Kirk*, 558 N.E.2d 1119 (Ind.Ct.App.1990); *Masterson v. State*,

511 N.E.2d 499 (Ind.Ct.App.1987). Once a party fails to perfect an appeal, the judgment must become final at a fixed, visible, and predictable point. *See Masterson*, 511 N.E.2d 499; *see also Mickle*, 558 N.E.2d 1119 (once a party allows a judgment to become final, it may not use T.R. 60 relief based on a later appellate decision, and the first decision has res judicata effect). T.R. 60(B) envisions exceptional and extraordinary circumstances. *Masterson*, 511 N.E.2d 499.

▮▮▮▮▮ FSSA alleges that HH's argument on res judicata is frivolous because the doctrine is inapplicable to an injunction which is not a final judgment.[6] It appears that once the judicial determination was made awarding judgment to HH, the judgment became final. The 1992 order and the agreed entries refer to the trial court's ongoing jurisdiction as if it is a permanent injunction. Permanent injunctions are limited to prohibiting injurious interference with rights. *Indiana & Michigan Elec. Co. v. Whitley County R.E.M.C.*, 161 Ind.App. 492, 316 N.E.2d 584 (1974). If an injunction is overbroad or if it becomes an instrument of wrong through changed circumstances, it is subject to modification through the court's continuing equity jurisdiction. *Id.; see also Hvidston v. Eastridge*, 591 N.E.2d 566 (Ind. Ct.App.1992). Further, federal case law notes that district courts may dissolve, modify, or vacate injunctions when warranted by the circumstances, even though the original judgment was not objected to or appealed. *See McIntyre v. Morgan*, 624 F.Supp. 658 (S.D.Ind.1985).

FSSA alleges that the changes in the reimbursement formula constitute the exceptional and extraordinary circumstances which would allow relief under T.R. 60(B). Alterations in the structure of Medicaid reimbursement appear to be squarely within the class of changes anticipated by T.R. 60(B)(7). *See Saint Joseph's Hosp. v. Women's Pavilion*, 451 N.E.2d 1126 (Ind.Ct.App.1983) (change in law allowed a T.R. 60(B)(7) request for relief which turned permanent injunction into instrument of wrong); *cf. Hvidston*, 591 N.E.2d 566 (failure to identify changed circumstances, rather than continuing displeasure with injunction, would not warrant modification).

▮▮▮ The ongoing process of Medicaid reimbursement made it amenable to a prospective judgment. As amply supported by the trial court here, and by references in similar cases, the facilities must be able to rely upon payment which may not be forthcoming without court intervention. *See Tioga*, 637 N.E.2d at 1315 (court observed, "[f]rom a historical perspective, it appear[s] unlikely that the State would comply with the procedural requirement without being motivated by the threat of a court order"). A prospective judgment allowed stability and certainty. Conversely, a prospective judgment may become faulty when the law upon which it is based is altered. The parties and the court contemplated monitoring and revising the order to maintain the proper procedures under the current versions of the regulations.[7] Even absent the reserved ability to reexamine the order as found in this case, T.R. 60(B)(7) explicitly allows parties to request such review of prospective orders which become inequitable.[8]

The balance between finality and the court's continuing jurisdiction retained under

---

6. The first appeal in this case was considered under IC § 4–21.5–5–9 allowing stays of certain agency decisions pending judicial review. *See also* T.R. 65 (regarding injunctions); *Laux v. Chopin Land Assoc., Inc.*, 615 N.E.2d 902 (Ind. Ct.App.1993) (preliminary injunction designed to protect property and rights until equities and issues judicially determined). The distinction between a temporary and permanent injunction is procedural; the former is issued while an action is pending, the latter on its final disposition. *Indiana & Michigan Elec. Co. v. Whitley County R.E.M.C.*, 161 Ind.App. 492, 316 N.E.2d 584 (1974).

7. As noted by HH, FSSA is in a position to manipulate alterations in the regulations by adopting new procedures. Because the states must comply with federal guidelines, and regulations are subject to court scrutiny albeit deferential, the agency's ability to arbitrarily alter methods is neutralized. *See Ind. Bd. of Pub. Welfare v. Tioga Pines*, 622 N.E.2d 935 (although Administrative Adjudication Act provides that agency rulemaking is not subject to judicial review, rulemaking process is not exempt from judicial review).

8. This court recognizes the incongruity of FSSA's position: that it deserves equitable relief from the prospective portions of the unappealed 1992

the 1992 order can be achieved. The 1992 judgment became a final damages award, as to the remedy for FSSA's past wrongful conduct, when FSSA failed to perfect its appeal. As to the prospective or injunctive portion of the order, it could be reexamined based upon alterations in the laws and regulations upon which the order was based. As recounted above, the order specifically so provides. Further, the parties explicitly acknowledged in the agreed entries that the trial court retained jurisdiction to review the viability of the judgment in the future.

Once FSSA requested relief on October 25, 1996, the trial court was obliged to reconsider the viability of the 1992 order based upon the new laws and regulations. Finality and the agreed entries dictate that, until FSSA's request for relief, the 1992 judgment remained in full force.

In denying FSSA's request for relief, the trial court found the delay in making the request would bar relief through the doctrine of laches. HH contends, and the trial court found, that FSSA's knowledge of the change in the regulations without requesting relief should bar its request made approximately two years after the alterations to the law.

A determination on the issue of laches is a question of fact to be resolved by the trial court and reviewed for an abuse of discretion. *Shafer v. Lambie*, 667 N.E.2d 226 (Ind.Ct.App.1996). "Laches is comprised of three elements: (1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party." *Id.* at 231. No one element, not even the passage of time, is sufficient to demonstrate laches. *See id.*

We need not address whether, as FSSA asserts, the doctrine is inapplicable to governmental agencies. *See Taylor v. Metropol-*

*itan Dev. Comm'n*, 436 N.E.2d 1157 (Ind.Ct. App.1982) (this court stated, "[a]ssuming the doctrine of laches is applicable to block a municipal corporation in the exercise of its governmental duty to enforce zoning regulations, we review the trial court's decision against Campbell on his defense of laches only for a clearly demonstrated abuse of discretion." *Id.* at 1159); *but see U.S. v. Wedzeb*, 809 F.Supp. 646 (S.D.Ind.1992) (laches generally inapplicable to governmental agencies acting to protect public welfare). There has been no showing of prejudice. The agreed entries provide that FSSA will continue to reimburse HH at the agreed rates until further order of the court. Additionally, the agreed entries specifically provide that FSSA will not pursue any claims for overpayments. *Record* at 1537. Again returning to the 1992 order and the agreed entries, the court and the parties specifically contemplated alteration to the judgment based upon change in the laws and regulations.[9] Thus, FSSA's request for relief may not be barred by laches.

To the extent that the trial court found that the motion for relief was barred by laches and that the 1992 order remains intact in its entirety based upon res judicata, the order denying relief is reversed. The prospective portions of the order are subject to modification effective upon the date of FSSA's request for relief.

### 2.

We turn now to the question whether FSSA is entitled to relief due to the changes in the Medicaid reimbursement policy; specifically, whether the changes require vacation, modification or dissolution of the prospective application of the 1992 order. *See McIntyre v. Morgan*, 624 F.Supp. 658. According to FSSA, the court is allowing HH a windfall as the only nursing facility in Indiana still operating with a reimbursement system based upon 1989 laws.[10] The former statute provided for a "prospective payment

order, when it unilaterally discontinued payments to HH prompting emergency petitions absorbing additional time and finances of the parties and the courts.

**9.** We would be remiss if we did not mention the extraordinary costs in time to the parties and to taxpayers, as well as the consumption of judicial

resources in part attributable to FSSA's palpable recalcitrance to negotiate and implement the parties' agreements.

**10.** Implicit in FSSA's complaint is an acknowledgment that it intends to pay facilities less than the amount of reimbursement allowed under 1989 regulations.

rate that is reasonable and adequate to meet the costs that are incurred by efficiently and economically operated facilities". *See* IC § 12–1–7–17.6(b). Arguing a substantial change in the law, FSSA noted that a revised statute provided for a "prospective payment rate that is reasonable and adequate to meet the costs that *must* be incurred by efficiently and economically operated facilities" (emphasis supplied). *See* IC § 12–15–14–2.[11] Further, FSSA urged that the revised regulations did not allow separate billing for supplies and therapies on a cost-plus-profit basis. Instead a single per diem rate was instituted.

FSSA contends that the Boren Amendment requires only that the state reimburse the reasonable and adequate cost which must be incurred by efficiently and economically operated facilities. In other words, the Boren Amendment does not require reimbursement of actual costs.

Under the Boren Amendment, federal courts and this court have said that it is not necessary to reasonably reimburse individual nursing facilities. Also, that failure may not be cause for injunctive relief showing "irreparable harm" even considering the threat of business failure. *See, e.g., Lett,* 965 F.2d 251, 256–57 ("[u]nder the current reimbursement standard, a state's inadequate reimbursement of one efficiently and economically operated facility does not necessarily constitute a Boren Amendment violation ..." (citations omitted)); *but see Jay County Rural Elec. v. Wabash Valley Power,* 692 N.E.2d 905 (Ind. Ct.App.1998) (mere economic injury is not entitled to injunctive relief, but the court has a duty to determine a legal remedy that is as full and adequate as an equitable remedy); *Tioga Pines,* 637 N.E.2d at 1315 ("[a]dequate compensation or other corrective relief, available at a later date weighs heavily against a claim of irreparable harm .... [h]owever, the mere existence of a remedy at law is not sufficient to preclude the issuance of a preliminary injunction)." (Emphasis in original) (citations omitted).[12] The court in *Lett* stat-

**11.** As noted by FSSA in their second motion for relief filed with this court, P.L. 130–1998, Sec. 2, with an emergency effective date retroactive to January 31, 1998, provides for a committee to "study, investigate, and oversee ... (3)[t]he establishment and implementation of a case mix reimbursement system designed for Indiana Medicaid certified nursing facilities". The section automatically expires December 31, 1999. The parties have not directed us to interim reimbursement regulations. Repeal of the Boren Amendment and state regulations in accordance therewith, without a specific replacement formula in place, leaves the parties, the trial court, and this court in an awkward position. FSSA asks for relief from the prospective order, yet if the reimbursement scheme is repealed and a new formula is not in place, it is unclear how FSSA proposes to reimburse HH, or other facilities.

**12.** HH made claims under the former IC § 12–1–7–17.2(b), now repealed. In part, HH distinguished *Lett v. Magnant,* 965 F.2d 251 because the claims for reimbursement under section 17.2 were dismissed as pendent state claims in *Lett.* As noted by HH, it has relied upon then existing state reimbursement regulations, a tactic specifically touted in *Lett* as a better approach than reliance upon the Boren Amendment. *See Lett,* 965 F.2d 251. Further distinguishing the circumstances in *Lett,* HH notes that it based its claims of increased costs on federal requirements for active treatment, not state licensure changes, and not the reasons set forth by the plaintiff in *Lett* requesting an increased rate based upon a special category of facility. In large part, the *Lett* court determined that the plaintiff could have increased its reimbursement rate by qualifying at a higher certification level.

HH notes that its facility achieved the skilled nursing care level (SNF); yet, greater treatment is required by federal mandate. Thus, according to HH, as an efficiently operated facility it should be reimbursed 'at a higher rate to 'meet the reasonable and adequate components of reimbursement. Unlike the plaintiff in *Lett,* HH did not request a higher rate of reimbursement with the attendant standards required of a more skilled facility. Instead, HH requested reimbursement for "extraordinary costs" demanded by state and federal regulations. At one point in the litigation, FSSA suggested that HH could lower its category to one specifically encompassing mentally retarded patients. As noted by HH, the severely and profoundly retarded patients it cares for cannot be placed appropriately in an intermediate care facility for the mentally retarded (ICF/MR) rather than a skilled care facility. To lessen its rate, then request greater reimbursement appears not to serve the interests of the residents inasmuch as most require skilled nursing care rather than the intermediate care category expressly for mentally retarded residents. It is undisputed that many of the residents require skilled care for their physical problems, including cerebral palsy and seizure disorders, and active treatment for their profound or severe retardation. Because many of the residents have tracheotomies and gastronomy tubes, require oxygen and apnea monitors, are wheel chair dependent and are incontinent, HH has asserted that they require two or three

ed, "[i]t is not unreasonable for the DPW to maintain that Hamilton Heights is an anomaly, and that it cannot set up a reimbursement scheme tailored to each participating facility." *Id.* at 260; *see Department of Pub. Welfare v. Lifelines of Ind.*, 637 N.E.2d 1349 (Ind.Ct.App.1994) (at the heart of the Boren Amendment was cost-containment and contemplated rates which may not be sufficient to keep every facility participating in the program).

After *Lett*, this court decided *Tioga Pines*, 637 N.E.2d 1306, using our supreme court's decision in *Tioga Pines*, 622 N.E.2d 935 as guidance. This court noted that federal Medicaid reimbursement law specifically requires "findings and assurances by the participating state that its methods and standards result in reasonable and adequate payment rates...." *Tioga Pines*, 637 N.E.2d at 1312. Contrary to the spirit of FSSA's arguments, the reasonableness of the rates and financial concerns in general are not the sole factors which states must consider when determining Medicaid reimbursement methods. Federal laws require an assessment of quality of care and reasonable access. *Id.* at 1314. A system based solely upon financial or budgetary concerns does not comport with federal laws. *Id.*

Remaining consistent with the general rule that threatened business failure alone is not sufficient to warrant injunctive relief, this court in *Tioga Pines*, 637 N.E.2d 1306, noted the requirement of equilibrium between the financial interests of the facility and the public's interests in accessibility and quality of care. The court compared the trial court's findings that new reimbursement regulations would significantly threaten the public's interest in the quality of care required by federal and state law with the lack of such findings in earlier decisions. *Id.* The court reasoned that the presence of such findings can distinguish those instances where the courts allow consideration of the financial health of a facility and those cases where that concern is not sufficient to allow injunctive relief. *Id.*

As set forth above, in the present case the trial court found, as it had in its 1992 order,

that it would be more expensive to care for the mentally retarded residents in another setting. Also, the court noted that other settings may not be available considering the losses incurred by other facilities. The court explicitly found that the public interest would not be served by discharging the residents "from a place at which they are comfortable and well cared for, to a State or other institution at which they may be provided inadequate care at a greater cost to the taxpayers." *Record* at 2238.

The findings support the determination that HH is an efficiently and economically operated facility. There is no indication that HH's costs are not reasonable or that they are not necessary. In fact, FSSA has recognized that HH may be absolutely mandated by Indiana's departments of health and welfare, as well as the Boren Amendment to provide "active treatment" in addition to the skilled care which it provides. Thus, the trial court found that the failure to reimburse the reasonable costs is arbitrary and capricious. The trial court's findings could support a continuation of enhanced reimbursement if based upon the Medicaid reimbursement laws in effect at the relevant times.

 HH contends, and the trial court found, that the changes were merely semantic, not substantive. The trial court dismissed the argument that the basis for its unappealed judgment was removed when the State amended the regulations for reimbursement. The trial court found that its decision was not based strictly upon the regulations and is more in the nature of an equitable decision. Although the trial court noted that the changes did not significantly alter the procedure for requesting enhanced reimbursement, its acknowledgment that the judgment does not follow the regulations requires remand. The federal Medicaid laws require states to institute and follow reimbursement formulae which comport with the federal mandates for participation in the program. The challenge in the present case was not to the vitality of the state regulations vis-

---

times the level of nursing care required by geriatric patients who need skilled nursing care. *Record* at 404. Further, considering the repeal

of federal and state Medicaid laws, it is not entirely clear that distinctions regarding the levels of care have been retained.

a-vis federal law; consequently, the trial court was free to fashion a remedy to the extent that it remained within the framework of the regulations in effect at the time.

Accordingly, to the extent that the trial court determined that its judgment need not be based upon the regulations, it is in error. The court explicitly found in denying relief that FSSA did not present a viable per diem rate to adequately compensate HH. Further, the trial court mentioned HH's evidence as to a per diem rate, but it did not make a finding accepting that evidence. On remand, the trial court must make a determination based upon the laws in effect at the time of the request. *Cf. Yater v. Hancock County Bd. of Health,* 677 N.E.2d 526 (Ind.Ct.App.1997) (generally, permit applications are considered under requirements in effect at the time of the request).

FSSA is entitled to an assessment of the proper reimbursement formula in effect at the time it first requested relief from the judgment. The trial court's unappealed order of December 15, 1992 is effective until that date. Because the order is in the nature of an injunction, inasmuch as the order itself refers to the need for continuing assessments of the reimbursement scheme, additional review of the rate was contemplated by the order. The cause is remanded for an assessment by the trial court of the correct reimbursement formula in effect at the time of FSSA's request for relief, and for alteration, if any, to the reimbursement rate for HH which may be required. Although the trial court made mention of the lack of real change to the reimbursement scheme at the time it entered its ruling on FSSA's T.R. 60(B) motion, FSSA is entitled to an assessment under the law in effect at the time of the request for relief.

After this appeal arose, according to FSSA's motion for relief to this court, the Boren Amendment and, in turn, the state's Medicaid reimbursement regulations were repealed. FSSA's request for relief to this court may be considered continuing in nature requiring the trial court to make a separate assessment under laws in effect at the time of the remand.

The judgment is reversed and remanded.

NAJAM and MATTINGLY, JJ., concur.