**Dr. William M. FELSHER, Appellant–Defendant,**

v.

**UNIVERSITY OF EVANSVILLE, Dr. James S. Vinson, Dr. Stephen G. Greiner, and Dr. Larry W. Colter, Appellees–Plaintiffs.**

No. 82A04–9910–CV–455.

Court of Appeals of Indiana.

May 3, 2000.

Dr. William M. Felsher, Evansville, Indiana, Appellant Pro Se.

Thomas O. Magan, Scott F. Hill, Kahn, Dees, Donovan & Kahn, Evansville, Indiana, Attorneys for Appellees.

## OPINION

BAKER, Judge

Appellant-defendant Dr. William M. Felsher appeals the trial court order permanently enjoining him from misappropriating the names, reputations or likenesses of the University of Evansville (UE) or of any person associated with the University; from maintaining websites or e-mail incorporating the names of persons associated with UE; and from nominating anyone associated with UE for positions at other institutions. Specifically, Dr. Felsher argues that the trial court erred because (1) the University of Evansville cannot, as a corporation, be party to an Invasion of Privacy action; (2) the permanent injunction was unreasonably overbroad; (3) the trial court enjoined him from appropriating others' likenesses when appropriation of likeness was not at issue; and (4) the necessity for a permanent injunction was rendered moot by his voluntary removal of the websites and e-mail addresses which were the subject of the action.

### FACTS

The facts most favorable to Dr. Felsher reveal that he was employed by UE as a professor of French until October 1991, when his position was terminated. Appellee UE is an independent university, where the three other appellees are employed. Dr. James S. Vinson serves as President of UE, Dr. Stephen G. Greiner serves as Vice President for Academic Affairs, and Dr. Larry W. Colter serves as Dean of the College of Arts and Sciences.

In 1997, Dr. Felsher published on an Internet website several articles he had composed about alleged wrongdoing by President Vinson and other UE employees. One such article alleged that President Vinson had violated the UE Faculty Manual. Another suggested that a UE

professor had publicly declared himself unqualified to teach one of his courses. These articles were published first through the Internet service provider Dynasty On-line and thereafter through America On-Line (AOL). The website addresses with both web access providers gave the impression that the websites were created by Dr. Colton and Dr. Greiner, respectively.

Dr. Felsher next created e-mail addresses which gave the false appearance of belonging to President Vinson, Dr. Greiner and Dr. Colter. He then began writing letters over e-mail to various academic institutions which had job openings and nominating Dr. Greiner or Dr. Colter for the openings. He also frequently wrote nomination letters from the addresses he had created in names other than his own, thus creating the appearance that either Dr. Vinson or Dr. Colter was writing and nominating candidates for academic positions. In addition, Dr. Felsher notified addressee institutions of the websites he had created incorporating the name of Dr. Colton or Dr. Greiner, and he stated that the nominee's "accomplishments" or "activities at the University of Evansville" could be viewed there. R. at 52, 73. Dr. Felsher continued to write nomination letters to various colleges and universities at least until January 28, 1999.

On February 17, 1999, UE, President Vinson and Drs. Greiner and Colter filed the instant action alleging Invasion of Privacy and also filed a Motion for Preliminary Injunction. Shortly thereafter, Dr. Felsher removed the offending e-mail addresses as well as the two AOL websites named for Drs. Greiner and Colter. Dr. Felsher replaced these two websites with twelve new AOL websites which consisted of materials virtually identical to those at the prior two websites. Dr. Felsher continued to use the e-mail address in his own name to direct colleges and universities to visit the websites.

On April 30, 1999, the trial court held a preliminary injunction hearing. Dr. Felsher thereafter made a motion to remove UE as a plaintiff. On May 28, 1999, the trial court held another hearing on the preliminary injunction, and on June 16, 1999, the trial court granted a preliminary injunction in favor of UE. On July 8, 1999, UE filed a motion for summary judgment on the question of a permanent injunction. On September 2, 1999 the trial court held a permanent injunction hearing.

On September 3, 1999 the trial court denied Dr. Felsher's motion to remove UE as a plaintiff and entered summary judgment in favor of UE. The trial court's order permanently enjoined Dr. Felsher from (1) "appropriating the names and likenesses of the University of Evansville, Dr. James S. Vinson, Dr. Stephen Greiner, Dr. Larry W. Colter, or the name of any other person or individual associated with the University of Evansville"; (2) maintaining any websites or e-mail addresses incorporating the names " 'University of Evansville,' 'UE,' " or the names of the other plaintiffs, or the names of "any other person or individual associated with the University of Evansville"; or (3) nominating any person associated with UE for positions with other schools. Record at 281–82. Dr. Felsher now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When this court reviews an entry of summary judgment, we follow the same standards as the trial court. *U.S. Auto Club, Inc. v. Smith,* 717 N.E.2d 919, 922 (Ind.Ct.App.1999), *trans. denied.* We do not reweigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate if the pleadings and evidence show both the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Brandmaier v. Metropolitan Development Com'n of Marion County,* 714 N.E.2d 179, 180 (Ind.Ct.App.1999), *trans. denied.* The trial court's grant of summary judgment is clothed with a presump-

tion of validity, and Dr. Felsher bears the burden of proving that the trial court erred. *Id.*

## II. University as Plaintiff

Dr. Felsher first argues that the trial court erred in denying his motion to strike UE as a named plaintiff because a corporation cannot be a party to an invasion of privacy action. Specifically, he argues that a corporation cannot have the "hurt feelings" which are at the core of an invasion of privacy claim. Appellant's brief at 13.

We note initially that Indiana recognizes four strands of the general tort known as invasion of privacy. They are: (1) unreasonable intrusion upon the seclusion of another; (2) publicity that unreasonably places another in a false light before the public; (3) unreasonable publicity given to another's private life; and (4) appropriation of another's name or likeness. *Near East Side Community Org. v. Hair,* 555 N.E.2d 1324, 1334–35 (Ind.Ct.App.1990).

We agree with Dr. Felsher that a corporation may not properly sue under the first three strands listed above. However, corporate entities are entitled to bring a claim under the appropriation strand because it is intended to protect a property interest in name and likeness. *See* RESTATEMENT (SECOND) OF TORTS § 652I (1977) ("Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded").

There are no Indiana cases regarding the strand of invasion of privacy involving appropriation of another's name or likeness. Thus, we refer to the RESTATEMENT (SECOND) OF TORTS for the definition of the tort: an appropriation and use of a plaintiff's name or likeness occurs whenever the defendant "makes use of the plaintiff's name or likeness for his own purposes or benefit, even though the use is not a com-

mercial one, and even though the benefit sought to be obtained is not a pecuniary one." *Id.* at cmt. b.

In this case, Dr. Felsher created websites and e-mail addresses containing the name UE and purporting to belong to employees of UE while Dr. Felsher controlled the contents of the sites. R. at 45, 46–48, 50–52, 73, 76–79, 84. Recipients of e-mail from these addresses responded in the belief that President Vinson or Dr. Colter had written the e-mail messages received. R. at 80–81. We find that this use of UE's name suffices to give rise to a cause against Dr. Felsher for appropriation of a party's name or likeness, an action which can be maintained by an entity other than an individual. *See* RESTATEMENT (SECOND) OF TORTS § 652I. A university or other corporate entity has an interest in the exclusive use of its own identity, as represented by its name or likeness, separate from any interest in protection of personal feelings. *See id.,* § 652C cmt. a (1977). For these reasons, we conclude that the trial court did not err in denying Dr. Felsher's motion to strike UE as a named plaintiff.

## III. Appropriation of Likeness at Issue

Dr. Felsher next contends that the court erred in enjoining him from appropriating the likeness of any party because there was no evidence that he had done so. Specifically, he maintains that "likeness" is defined by ordinary dictionaries as "a representation, picture or image, especially a portrait." Appellant's brief at 19.[1]

We have already discussed, in Section II, the strand of invasion of privacy recognized in Indiana and known as "appropriation of name or likeness." The trial court in this instance simply used the language ordinarily associated with the action. R. at 181. Tort law dictates that Dr. Felsher has no right to appropriate either a name

---

1. Felsher apparently does not contest Drs. Greiner's and Colter's claim of a separate invasion of privacy action against him for having placed them in a false light before the public.

*or* a likeness not his own. *See* Restatement (Second) of Torts § 652. We note in addition that it is not beyond the capabilities of websites to contain a picture of a human being or a campus, and for this reason, the court did not err in using the standard language to describe the specific acts of appropriation for which the law ascribes liability and from which Dr. Felsher is enjoined.

### IV. Effect of Voluntary Removal of Websites

■ Dr. Felsher next argues that the necessity for a permanent injunction was rendered moot by his removal of the websites and e-mail addresses to which the plaintiffs objected, and his promise not to nominate the plaintiffs for positions elsewhere. Specifically, he points to his removal of the websites named for "SGreinerUE," "LWColterUE," and "JSVinsonUE," and of the e-mail addresses *SgreinerUE@aol.com* and *LWColterUE@aol.com,* and *JSVinsonUE@aol.com.* Appellant's brief at 20. He maintains that the need for an injunction is obviated by these acts and by his promise not to nominate the plaintiffs "or any person or individual associated with the University of Evansville for positions with other schools, colleges, or universities." R. at 148.

■ We note initially that the difference between a preliminary and a permanent injunction is procedural. A preliminary injunction is issued while an action is pending, while a permanent injunction is issued upon a final determination. *Indiana Family and Social Services Admin. v. Hospitality House,* 704 N.E.2d 1050, 1061 (Ind.Ct.App.1998). When granting a preliminary injunction, a court must consider the following factors: (1) whether plaintiff's remedies at law are inadequate; (2) whether the plaintiff will likely prevail at trial (3) whether plaintiff's threatened injury outweighs potential harm to defendant resulting from granting of an injunction;

and (4) whether the public interest will be disserved. *Norlund v. Faust,* 675 N.E.2d 1142, 1149 (Ind.Ct.App.1997), *trans. denied.* The plaintiff's remedies at law are inadequate where irreparable harm would be caused pending resolution of the substantive action if the injunction did not issue. *Indiana State Bd. of Public Welfare v. Tioga Pines Living Ctr., Inc.,* 637 N.E.2d 1306, 1311 (Ind.Ct. App.1994), *cert. denied,* 510 U.S. 1195, 114 S.Ct. 1302, 127 L.Ed.2d 654 (1994). Finally, permanent injunctions are limited to prohibiting injurious interference with rights. *Hospitality House,* 704 N.E.2d at 1061.

In this instance, the factors which the trial court considered in granting the temporary injunction clearly favored UE and its employees. All of these plaintiffs would have suffered irreparable harm to reputation if the temporary and the permanent injunction had not been granted. The number of Dr. Felsher's contacts is unknown and the effect of his messages on his contacts is unknown; however the evidence is replete with examples of his efforts to misrepresent the plaintiffs to the public. Thus, money damages would be inadequate because they cannot repair a damaged reputation. Furthermore, because Dr. Felsher could have continued his activities despite his promises, the permanent injunction was necessary to prohibit injurious interference with the rights of UE and its employees to be free of appropriation of their names or likenesses. *See id.*

In addition, the balance of harms weighs in favor of the plaintiffs. As a matter of law, we determine that we cannot reasonably consider possible harm coming to Dr. Felsher if he is enjoined from taking actions for which he would incur tort liability. In contrast, the potential harm to the plaintiffs in allowing Dr. Felsher to proceed free of any injunction is serious, his promises notwithstanding. Dr. Felsher created both e-mail addresses and websites which gave the appearance of belong-

ing to UE employees. R. at 54–72. He entered material of his own creation on the websites in an apparent effort to hurt the image of UE. R. at 54–72. In these circumstances, we find the potential danger to the plaintiffs far outweighs any potential harm to Dr. Felsher.

Finally, the public interest is served well rather than disserved by a permanent injunction against persons known to misuse electronic communications in a manner which amounts to invasion of privacy. We note that Dr. Felsher does not attempt to suggest that the public would be disserved by an injunction against the actions involved here.

For all of these reasons, we find that the trial court did not err in issuing the preliminary or the permanent injunction. We agree with the trial court's apparent conclusion that Dr. Felsher's behavior and his promises did not eliminate the need for the injunction.

## V. Breadth of Permanent Injunction

Finally, Dr. Felsher claims that the trial court erred in granting a permanent injunction which is unreasonably overbroad. Specifically, he argues that the trial court erred in including an infinite number of anonymous non-plaintiffs when it enjoined him from nominating the named plaintiffs "or any other person or individual associated with the University of Evansville" for academic positions elsewhere. R. at 282.

This court has already determined that an injunction is an extraordinary equitable remedy which should be granted with caution. *Day v. Ryan*, 560 N.E.2d 77, 83 (Ind.Ct.App.1990). We have found that the scope of injunctive relief shall extend only as far as is "reasonably necessary to protect the interests of the party in whose favor it is granted." *Id.* (although farmers could not maintain stockyard in area zoned for agricultural use, they were permitted to dedicate to agricultural use structures intended as stockyards rather than demolish the structures).

In this instance, we find that the trial court logically extended protection to "any person or individual associated with the University of Evansville," because this restriction was necessary to protect the interests of UE. The evidence strongly suggests that Dr. Felsher's goal was to damage the reputation of UE, his former employer. He accused the president of violating the school's faculty manual, and accused other UE employees of alleged wrongdoing, including negligence and conversion. R. at 54–72. He directed e-mail recipients at over 80 universities and colleges to visit websites he created but which gave the appearance of belonging to UE employees. R. at 76–79. A significant number of his addressees responded in writing expressing the mistaken belief that President Vinson or Dr. Colter had written to them. R. at 80–81. The articles posted on the websites had been written by Dr. Felsher and were critical of the university and its employees. R. at 54–62. The harm to UE would be equal if Dr. Felsher were to create websites and e-mail addresses in the name of any other person associated with UE, as well as in the names of the plaintiffs. Therefore, a permanent injunction forbidding him to do so is not error. *See Day*, 560 N.E.2d at 83.

However, we read narrowly the trial court's order that Dr. Felsher not nominate anyone associated with UE for any other position. The trial court may not deprive Dr. Felsher of any right he has to nominate someone for a position if he does so in his own name and from his own e-mail address. We interpret the trial court's order to enjoin him from assuming others' identities through website and e-mail names, and then making misleading nominations. Dr. Felsher may thus earn for himself whatever reputation might reasonably be earned from his behavior, and he will not cause others to mistakenly believe a different actor is the source of such behavior.

**790**

For all of the above reasons, we affirm the trial court's grant of summary judgment in favor of UE and the other named plaintiffs.

Judgment affirmed.

KIRSCH, J., concurs.

RILEY, J., concurs in result.