INDIANA FAMILY AND SOCIAL SER-
VICES ADMINISTRATION, John
Hamilton, Secretary, Division of Fam-
ily and Children, James Hmurovich,
Director, Office of Medicaid Policy &
Planning, Kathleen Gifford, Assistant
Secretary, Appellants–Respondents,

v.

HOSPITALITY HOUSE OF
BEDFORD, Appellee–
Petitioner.

No. 49A02–0206–CV–467.

Court of Appeals of Indiana.

Feb. 5, 2003.

Randall R. Fearnow, Libby Y. Mote, Krieg DeVault LLP, Indianapolis, IN, Attorneys for Appellee.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants.

## OPINION

BAKER, Judge.

Following a remand to the trial court, this case comes before us once again. Appellants-respondents Indiana Family and Social Services Administration (FSSA) *et al.*, appeal the trial court's judgment entered in favor of the appellee-petitioner Hospitality House of Bedford (Hospitality House), claiming that remand instructions set forth by this court in *Indiana Family & Social Services Administration v. Hospitality House of Bedford*, 704 N.E.2d 1050 (Ind.Ct.App.1998),[1] were incorrectly followed. Specifically, the FSSA argues that the Medicaid reimbursement rate for Hospitality House was not supported by sufficient evidence, that the award of $524,549.47 in retroactive Medicaid reimbursement dating back to July 26, 2001,

---

1. This protracted litigation has seen quite a history. As will be more fully explained *infra*, there was a previous appeal to this court, *see Scales v. Hospitality House of Bedford*, 593 N.E.2d 1283 (Ind.Ct.App.1992), that resulted in reversal and remand, a judgment in December 1992 in favor of Hospitality House, dismissal of the FSSA's appeal of the 1992 order for failure to timely perfect the appeal, enforcement requests and agreed entries, a request for relief from the 1992 judgment upon which the *Hospitality House* appeal in 1998 was based, and a motion for relief directed to this court after the 1998 *Hospitality House* appeal was perfected.

was improper, and that the trial court erred when it did not dissolve a former judgment that related to this action. Concluding that the trial court's findings of fact and conclusions of law were supported by the evidence, that the trial court's judgment was consistent with this court's instructions on remand and that the judgment is consistent with all applicable Medicaid regulations, we affirm.

## FACTS

The FSSA is responsible for administering the Medicaid program aimed at providing health care to certain low-income individuals who would not otherwise be able to afford medical treatment. *Hospitality House*, 704 N.E.2d at 1053. Continuing Care, a not-for-profit corporation associated with Bloomington Hospital, owns and operates Hospitality House, a nursing facility in Bedford. Hospitality House is also a comprehensive care facility and is certified to provide nursing services in accordance with Medicaid, Title XIX of the Social Security Act under 42 U.S.C. § 1396. The federal Medicaid laws require states to institute and follow reimbursement formulae that comport with the federal mandates for participation in the program. Under such circumstances, a trial court is free to fashion a remedy to the extent that it remains within the framework of the state regulations that are in effect at the time. *Hospitality House*, 704 N.E.2d at 1064–65.

For years, Hospitality House has operated a unit for the treatment of a special group of pediatric residents [2] who require greater care than that which is normally provided in a skilled nursing home facility. As of November 2001, there were sixty-seven patients residing in Hospitality House's pediatric wing. Most of the residents are profoundly retarded and suffer from multiple physical disabilities, including cerebral palsy and seizure disorders. Beginning in 1989, Hospitality House was required to incur a substantial increase in operating costs as a result of changes in federal and state law mandating that it provide "active treatment" to the residents of the pediatric wing.[3] This is a federal condition of participation in Medicaid that is enforced by the Indiana Department of Health and imposed on nursing facilities attempting to serve the needs of mentally retarded residents. To receive Medicaid funding, Hospitality House is required to provide a continuous active treatment program to each of its pediatric patients that includes aggressive, consistent implementation of a program of specialized and generic training, treatment, health services and related services.

In an effort to comply with the applicable federal and state regulations governing active treatment, Hospitality House has specifically employed, and continues to employ, a number of mental retardation specialists and nurses. These individuals are required to create plans and conduct active treatment in the pediatric wing. Hospitality House would not be required to retain these additional employees and would not

---

**2.** These patients require greater care than that normally provided in a skilled nursing facility. Appellants' App. p. 28. Moreover, such residents of Hospitality House's pediatric wing "are the poorest of the poor." Appellants' App. p. 51.

**3.** 470 IAC section 5–4.1–6(d) permits separate and distinct rate reviews because of increases in services that are mandated by changes in federal or state law or regulation during a calendar year, which became 405 IAC section 1–14–6 effective in 1994, then 405 IAC section 1–14–6. 42 C.F.R. § 483.440 also contains a requirement for the active treatment of mentally retarded patients.

have hired these additional employees had the facility operated only a geriatric wing.

Litigation commenced in this case in November 1989, when Hospitality House requested state agency review seeking a special Medicaid reimbursement rate due to the extraordinary costs it was mandated to incur by federal Medicaid laws when the State Department of Health began enforcing "active treatment" requirements for all mentally retarded pediatric residents. *Hospitality House,* 704 N.E.2d at 1053. Although an administrative law judge (ALJ) entered a judgment for Hospitality House, review by the FSSA resulted in rejection of Hospitality House's request for enhanced reimbursement. *Id.* at 1054. As a result, Hospitality House pursued administrative remedies and filed a verified petition for Judicial Review and Stay appealing the FSSA's denial of its request for enhanced Medicaid reimbursement.

The trial court awarded Hospitality House a judgment in 1992. *Id.* The FSSA failed to appeal that decision, but it filed a T.R. 60(B)(7) motion for relief from that judgment. The trial court subsequently denied the FSSA's request for relief. *Id.* On December 15, 1992, the trial court entered findings of fact and conclusions of law along with an order requiring the FSSA "to recalculate the Petitioner's Medicaid rate from the date of Petitioner's initial request for rate relief under 470 IAC 5–4.1–6(d) and to pay [Hospitality House] both retroactively and prospectively, through its Medicaid rate, for all costs reasonably incurred in complying with the additional active treatment requirements imposed by federal regulations and enforced by the Department of Health or otherwise incurred by Hospitality House in complying with state and federal regulations." Appellee's App. p. 65. The FSSA was also ordered to continue Medicaid reimbursement to Hospitality House at a minimum rate of $107 per patient per day with ancillary costs of supplies and therapies to be billed and reimbursed separately. Moreover, the trial court determined that "further revisions of this rate need to be calculated by [the FSSA] in response to any additional financial information to be submitted by [Hospitality House]." Appellee's App. p. 65.

The $107 per patient per day rate set in 1992 was based on 1989 data and the actual cost of care for the pediatric residents at Hospitality House exceeded the cost of care for those residents in traditional geriatric nursing facilities. It was established that more hours of direct care at Hospitality House were expended per patient per day in the pediatric wing as compared to those individuals in the geriatric wing. Under the $107 per patient per day reimbursement plan, it was demonstrated that the pediatric wing of Hospitality House was losing $33 per patient per day that amounted to an operating loss of approximately $70,000 per month.

On May 13, 1994, Hospitality House filed a verified petition for enforcement of the trial court's judgment in light of the FSSA's refusal to comply with the court's order. The parties ultimately entered into an Agreed Entry that was approved by the trial court on June 20, 1994. The order provided, among other things, that the FSSA was to reimburse Hospitality in the amount of at least $107 per patient per day for care provided to all residents of the pediatric unit. The court was to retain jurisdiction to resolve any future disputes between the parties related to compliance with the court's order either before or after the effective date of any changes in the Medicaid reimbursement system. Hospitality House was also entitled to payment of all legally allowed interest on sums requested by it from the FSSA if it was compelled to return to the trial court

for assistance and if it was successful on its claim.

Hospitality House filed yet a second verified petition for enforcement of the trial court's 1992 order following the FSSA's unilateral decision to cease reimbursing Hospitality House separately for the costs of supplies and therapies. This petition was resolved in a similar fashion through the execution and approval of an agreed entry on December 13, 1996. In the 1996 agreed entry, the FSSA agreed to resume separate reimbursement of medical supplies and therapies in addition to the payment of the $107 per patient per day Medicaid rate.

In the meantime, the FSSA sought relief from the trial court's 1992 order, alleging that various changes in the State's Medicaid reimbursement methodology and applicable laws warranted clarification, modification or vacation of the order. The trial court denied the FSSA's motion on August 8, 1997, on the grounds that the motion was barred by laches and that the changes in Medicaid regulations were not substantive.

On appeal, we determined that the FSSA's request for relief was not barred by laches because the trial court and the parties "specifically contemplated alteration to the judgment based upon change in the laws and regulations" in the 1992 order as well as the agreed entries. *Hospitality House*, 704 N.E.2d at 1062. We also held that the FSSA's continued failure to reimburse Hospitality House for the reasonable costs incurred in providing active treatment and the trial court's findings that such actions were arbitrary and capricious "could support a continuation of enhanced reimbursement if based upon the Medicaid reimbursement laws in effect at the relevant times." *Id.* at 1064. We reversed and remanded the cause "for an assessment by the trial court of the correct [Medicaid] reimbursement formula in effect at the time of FSSA's request for relief [under Trial Rule 60(B)], and for alteration, if any, to the reimbursement rate for Hospitality House which may be required." *Id.* at 1065. We also instructed the trial court "to make a separate assessment [of the correct reimbursement formula] under laws in effect at the time of the remand." *Id.*

The FSSA took no action for the year and one-half following this court's reversal and remand in *Hospitality House*. Thus, Hospitality House ultimately filed a petition for review of Medicaid reimbursement and a hearing following our remand. In the petition, Hospitality House sought enforcement of the trial court's 1992 order and "the opportunity to offer evidence and argument on remand as to the continued inadequacy of [FSSA's] reimbursement to [the pediatric wing]." Appellants' App. p. 28. Before the hearing, the trial court granted Hospitality House's motion to consider the facts litigated in the former appeal as *res judicata* and the decision rendered in *Hospitality House* the law of the case. Following a hearing, the trial court entered an order on April 15, 2002, determining that Hospitality House was entitled to reimbursement dating back to July 26, 2001, based upon a per diem rate of $218.02 that had been calculated and testified to by one of Hospitality House's expert accountants. The trial court then subtracted $454,091.83 in estimated costs of supplies and therapies that were paid by the FSSA separately under the original $107 reimbursement scheme, and Hospitality House was awarded judgment in the amount of $524,549.47. The FSSA now appeals.

## DISCUSSION AND DECISION

### I. Standard Of Review

In essence, the FSSA is challenging the sufficiency of the evidence re-

garding the trial court's calculation of the Medicaid reimbursement rate and retroactive Medicaid under-reimbursement dating back to July 26, 2001. In reviewing such a contention, we consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *Holliday v. Crooked Creek Villages Homeowners Ass'n, Inc.*, 759 N.E.2d 1088, 1091 (Ind.Ct.App.2001). This court will not reweigh the evidence or judge the credibility of the witnesses. *Id.* at 1092. We will affirm the judgment unless the evidence points incontrovertibly to an opposite conclusion. *Houchens v. Boschert*, 758 N.E.2d 585, 588 (Ind.Ct.App.2001), *trans. denied.*

■ We also note here that the trial court entered specific findings of fact and conclusions of law pursuant to Rule 52(A) of the Indiana Rules of Trial Procedure. Thus, we first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Holliday*, 759 N.E.2d at 1092. We will reverse the judgment only when it is clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any supporting, probative evidence or reasonable inferences from such evidence to support them. *Id.*

## II. FSSA's Claims

### A. Calculation of Medicaid Reimbursement Rate Applicable to Pediatric Wing

The FSSA first contends that the trial court failed to follow the instructions of this court on remand when it calculated a Medicaid reimbursement rate applicable only to Hospitality House's pediatric wing. Specifically, the FSSA makes the claim that this court clearly directed calculation of a proper Medicaid rate for Hospitality House as an entire facility. Appellants' Br. p. 24–25.

Contrary to the FSSA's claim, the record before us demonstrates that since the trial court's order in 1992, the FSSA has consistently reimbursed the geriatric wing of Hospitality House in accordance with a Medicaid rate calculated on the basis of costs incurred for only the geriatric residents. Since the order, the FSSA has consistently reimbursed the pediatric wing of Hospitality House separately from the geriatric wing at a rate of $107 per patient per day, plus ancillary costs of supplies and therapies. At no time in the history of this case has Hospitality House ever been reimbursed by the FSSA at a combined Medicaid reimbursement rate applicable to the entire Hospitality House facility. Appellants' App. p. 87. In fact, in 1989, Hospitality House sought an enhanced reimbursement rate applicable to the pediatric wing of its facility under 470 IAC 5–4.1–6(d). The ALJ's September 1990 entry of judgment provided that "the subject of this controversy is an 82 bed unit in a separate and distinct part of the building [in which Hospitality House operates]." The ALJ then went on to conclude that the "rate reimbursement for this wing of [HH] . . . [is] not adequate or reasonable to meet the needs of the patients" and thus ordered the FSSA to "adjust its reimbursement for the 82 bed [pediatric] unit of the facility in conformity to these findings." Appellee's App. p. 39–41.

It was the FSSA's refusal to accept the ALJ's determination that resulted in judicial review by the trial court and the entry of the 1992 order. That order established a $107 Medicaid reimbursement rate applicable solely to the pediatric wing of Hospitality House. The parties' 1994 agreed entry explicitly states that "[a] distinct part of [HH's] facility has been operated for many years as a pediatric unit to serve the healthcare needs of severely and profoundly retarded children and young

adults." The FSSA expressly agreed in 1994 to continue reimbursing Hospitality House "for the care of its pediatric unit residents at the rate of $107 per day[.]" Appellee's App. p. 67, 70.

· The FSSA's Rule 60(B) Motion for Relief from Judgment filed in October 1996 sought relief from the reimbursement rate set by the trial court for the pediatric wing of Hospitality House. Thus, the single issue in *Hospitality House* was whether the FSSA was entitled to a review of the court-ordered Medicaid reimbursement rate applicable only to Hospitality House's pediatric wing. *Hospitality House*, 704 N.E.2d at 1065. We determined that the FSSA was so entitled and remanded the cause to the trial court for a review and modification of the $107 Medicaid reimbursement rate. In essence, the Medicaid reimbursement rate for Hospitality House's geriatric wing was never raised, addressed or questioned by either party or the court on appeal. As a result, the trial court's calculation of a Medicaid reimbursement rate solely applicable to the pediatric wing of Hospitality House is fully consistent with this court's remand order and the entire course of this action where Hospitality House's pediatric wing has always been treated as a separate and distinct unit of the facility. Thus, the fundamental issue addressed throughout this litigation was, and has always been, the proper reimbursement rate for the pediatric wing of Hospitality House, and there was no error with respect to this issue.

### B. Calculation of Per Diem Rate of $218.02 Per Patient Per Day

The FSSA next argues that the trial court erred in concluding that the Medicaid reimbursement rate for the pediatric wing should be increased to a per diem rate of $218.02 per patient per day. Although the FSSA concedes that an expert for Hospitality House testified that such

an amount was appropriate, it argues that the trial court should have accepted the $138.02 reimbursement rate that was presented by its own expert.

■■■ In addressing this claim, we first note that the weight to be given expert testimony is for the trier of fact to decide, and it is not bound by an expert's opinion. Moreover, the trial court may even disregard such opinion if it so desires. *Ferdinand Furniture Co. v. Anderson*, 399 N.E.2d 799, 807 (Ind.Ct.App.1980). We will not reweigh the evidence or judge the credibility of the witnesses when reviewing the trial court's judgment. *Holliday*, 759 N.E.2d at 1092. The relative weight to be accorded conflicting testimony of experts rests within the exclusive province of the trial court as the trier of fact and will not be disturbed by the Court of Appeals on review. *See Combs v. Nat'l Veneer & Lumber Co.*, 160 Ind.App. 501, 313 N.E.2d 76, 77 (1974).

In this case, Pauline ·Clark, a certified public accountant, testified for Hospitality House that 470 IAC 5-4.1-6(d) permits a separate and distinct rate review due to an increase in services mandated by changes in federal or state law and allows for reimbursement for the costs of active treatment. Appellants' App. p. 83-86. Ms. Clark testified that a "6(d) exception" has been "continued in every set of regulations that have been applied for rate setting purposes to long term care facilities since 1989 through today. The language is slightly different . . . [b]ut the interpretation is the same." Appellants' App. p. 84-85.

We recognized in *Hospitality House* that a Medicaid regulation substantially identical to 470 IAC 5-4.1-6(d) was in effect at all times. Ms. Clark testified that the FSSA's proposed Medicaid reimbursement rate does not take into account the special, extraordinary costs incurred for

the mentally retarded residents of the pediatric wing and treats Hospitality House's pediatric population as equivalent to its geriatric population. Appellants' App. p. 97–98. Thus, the FSSA's proposed rate fails to properly consider the application of 405 IAC 5–4.1–6(d), which allows for a separate and distinct rate review due to an increase in services mandated by changes in federal and state law and allows for separate reimbursement with regard to active treatment.

■ The expert testifying for the FSSA admitted that his calculations did not take into consideration a "6(d)-type exception." Appellants' App. p. 115. As Ms. Clark recognized, the FSSA's proposed rate does not even begin to reimburse Hospitality House for the actual costs incurred in treating and caring for those patients residing in the pediatric wing. Appellants' App. p. 98–99. Thus, Ms. Clark testified that the proper Medicaid reimbursement rate should be $218.02 per patient per day, which is based upon the most current rate for the Hospitality House pediatric wing only and includes costs of supplies and therapies. Appellants' App. p. 88–90, 109, 143–51. Ms. Clark then explained that such a figure takes into consideration the application of 470 IAC 5–4.1–6(d) and its successors.

■ The FSSA, however, insists that the trial court should have deferred to the testimony of its expert because it was presented on behalf of the administrative agency. Appellants' Br. p. 25–26. However, even though an interpretation by an administrative agency charged with the duty of enforcing the applicable statutes and regulations is entitled to great weight, an agency's interpretation that is erroneous is entitled to no weight. *Dep't of Natural Res. v. Peabody Coal Co.*, 740 N.E.2d 129, 134 (Ind.Ct.App.2000). The FSSA's expert testified that his calculation

of the Medicaid reimbursement rate did not include the extraordinary and mandatory costs incurred by Hospitality House to comply with the active treatment requirements enforced by the Indiana Department of Health for all mentally retarded patients. Appellants' App. p. 115. Federal regulations compel the State to provide or arrange for the provision of specialized services such as active treatment to all mentally retarded patients. *See* 42 C.F.R. § 483.120. Moreover, all mentally retarded individuals in need of aggressive and continuous active treatment in an institutional setting are entitled to receive federally funded services. *See Partlow v. Ind. Family & Soc. Servs. Admin.*, 717 N.E.2d 1212, 1216 (Ind.Ct.App. 1999). It is fundamentally unfair for the State to require Hospitality House on the one hand to provide active treatment to mentally retarded patients in order to be eligible for Medicaid funding, and on the other hand, to deny Medicaid funding that pays for the costs incurred in providing such treatment. *See Calvert*, 672 N.E.2d at 493.

As has already been established, Ms. Clark testified that 470 IAC 5–4.1–6(d) allows for a separate and distinct rate review due to an increase in services mandated by changes in federal or state law and permits separate reimbursement for the costs of active treatment. The FSSA has not shown that the evidence in the record points incontrovertibly to a conclusion opposite that reached by the trial court or that the judgment is clearly erroneous. *See Houchens*, 758 N.E.2d at 588. Thus, we conclude that the trial court's calculation of the current Medicaid reimbursement rate for the pediatric wing of Hospitality House is supported by sufficient evidence, and there is no error with respect to this issue.

## C. Retroactive Award of Medicaid Under–Reimbursement

The FSSA next challenges the trial court's award of retroactive under-reimbursement in the amount of $524,549.47 that dated back to July 26, 2001. Specifically, it urges that such an award was erroneous because the trial court failed to follow the remand instructions of this court by not calculating the reimbursement rates effective on October 25, 1996, as well as the date of the remand, December 30, 1998, and that the trial court should have awarded the FSSA $4,019,502 for overpayments. Appellants' Br. p. 27–30.

Hospitality House concedes that this court's instructions on remand in *Hospitality House* were to determine the Medicaid reimbursement rate at the time of the FSSA's 60(B) Motion and at the time of remand. However, Hospitality House presented evidence and argument to the trial court that it had been consistently under-reimbursed by the FSSA since 1996, in an amount close to $5,000,000. Appellants' App. p. 29, 96–97. It was undisputed, and the trial court found, that Hospitality House's reimbursement rate of $107 was over ten years old and that Hospitality House was losing $33 per patient per day. Based on the evidence before the trial court, the amount of retroactive Medicaid under-reimbursement owed to Hospitality House would have been significantly higher than $524,549.47.

We also note that in an effort of compromise, Hospitality House advanced the position that it sought payment for retroactive under-reimbursement dating back only to July 26, 2001, premised upon the per diem reimbursement rate of $218.02 per patient per day. Appellee's App. p. 124, 127–28. Thus, subtracting out the $454,091.83 in estimated costs of supplies and therapies that were paid by the FSSA separately under the original $107 reimbursement scheme, it was Hospitality House's evidence that the FSSA owed a total amount of $524,549.47 in retroactive Medicaid under-reimbursement. Appellee's App. p. 124, 127–28. Thus, any need to calculate the reimbursement rates in effect before July 26, 2001, was rendered moot in light of Hospitality House's compromise to accept less retroactive under-reimbursement than that to which it was entitled.

Even more compelling, the trial court's decision to award Hospitality House $524,549.47 in retroactive Medicaid under-reimbursement is supported by sufficient evidence. As set forth above, the trial court adopted the Medicaid reimbursement rate for the pediatric wing of Hospitality House as established by the expert testimony of Ms. Clark. The trial court was not bound to accept the evidence presented by the FSSA or the conflicting testimony of the FSSA's expert. In essence, the FSSA's contentions that the trial court should have awarded it over four million dollars, is tantamount to a request that we should reweigh the evidence and assess the credibility of the witnesses. This, we decline to do. As a result, we cannot say that the evidence in the record points incontrovertibly to a conclusion opposite that reached by the trial court, and the FSSA has failed to show that the judgment is clearly erroneous.

## D. Trial Court's Refusal To Vacate the Judgment of December 15, 1992

As a final contention, the FSSA argues that "[t]he trial court erred by failing to vacate its [1992] injunction and returning the responsibility for calculating [Hospitality House's] ongoing Medicaid rate to the FSSA." Appellants' Br. p. 30. The FSSA asserts that "[t]here is no valid factual or legal basis for the trial court to continue to exercise jurisdiction or to periodically reset the Medicaid reimbursement rate for the facility[,]" and claims that the

trial court's December 15, 1992 judgment "has become an instrument of wrong" as a result of changes in circumstances. Appellant's Br. p. 31.

In addressing this contention, we note that the FSSA did not present any argument at the trial court level in support of its position. This court has determined that a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC,* 764 N.E.2d 647, 651 (Ind.Ct.App.2002). Thus, an argument or issue not presented to the trial court is generally waived for appellate review. *Id.* Moreover, when a party fails to develop a contention made in a brief and fails to cite any authority, the issue is waived for failure to present cogent argument or adequate citation. *Mitchell v. Stevenson,* 677 N.E.2d 551, 558 n. 3 (Ind. Ct.App.1997). Inasmuch as the FSSA failed to adequately present the issue of vacating the 1992 order to the trial court, the issue is now waived on appeal.

Waiver notwithstanding, the FSSA's contention that there is no valid factual or legal basis for the trial court to continue to exercise jurisdiction or to periodically reset the Medicaid reimbursement rate for Hospitality House is completely belied by the facts. Our opinion in *Hospitality House* bears this out:

> The [trial court's] 1992 judgment found [the FSSA's] action arbitrary and capricious and that the agency's actions were unreasonable and contrary to law; specifically with regard to the regulation which allows providers to request additional reimbursement for extraordinary expenses incurred due to state and federal requirements. In sum, the court noted that, based on its findings and the mechanism for reviewing agency decisions, it could either remand for further

proceedings or compel the agency to take action which had been unlawfully withheld. Given the findings of unreasonable, lengthy, and continuing delay by the agency, the court compelled action.

*Hospitality House,* 704 N.E.2d at 1060. Our decision in *Hospitality House* did not question the vitality of the 1992 order or the trial court's continued authority to review ongoing changes in the Medicaid reimbursement formula and issue further orders designed to alleviate the inadequacy of the FSSA's reimbursement to Hospitality House's pediatric wing. To be sure, our opinion in *Hospitality House* strengthens the trial court's continued jurisdiction to calculate the Medicaid rate applicable to the pediatric wing under the 1992 Order:

> The ongoing process of Medicaid reimbursement made it amenable to a prospective judgment. As amply supported by the trial court here, and by references in similar cases, the facilities must be able to rely upon payment which may not be forthcoming without court intervention.... The parties and the court contemplated monitoring and revising the [1992] order to maintain the proper procedures under the current versions of the regulations.

*Id.* at 1061. Additionally, the FSSA specifically acknowledged in the parties' 1994 agreed entry that the trial court "shall retain jurisdiction to resolve any future disputes between the parties related to compliance with the court's [1992] Order either before or after the effective date of any changes in the Medicaid reimbursement system." Appellee's App. p. 69–70. The trial court's "reserved ability to reexamine [its 1992] order" has been necessary in light of FSSA's historical and "palpable recalcitrance to negotiate and implement the parties' agreements" and continued unwillingness to follow both the trial court's

and the appellate court's directives. *See Hospitality House*, 704 N.E.2d at 1062 n. 9. Such is most recently demonstrated by the FSSA's refusal to calculate a single per diem rate applicable to the pediatric wing of Hospitality House despite repeated requests and a subpoena from Hospitality House to do so. Appellants' App. p. 122.

The relief fashioned by the trial court in 1992, recognized by the parties' Agreed Entries, and approved by this court in *Hospitality House*, was made necessary by the FSSA's refusal to conduct a proper rate review of Hospitality House's pediatric wing and, later, to even recognize the pediatric wing as a separate and distinct unit for rate calculation purposes. Therefore, the trial court committed no error in refusing to vacate its 1992 order.

### CONCLUSION

In light of the disposition of the issues set forth above, we conclude that the trial court's calculation of the Medicaid reimbursement rate applicable to the pediatric wing was proper and supported by the evidence. We also note that the retroactive award of the Medicaid under-reimbursement amount was appropriate and that the trial court did not err in refusing to vacate its prior 1992 judgment.

Judgment affirmed.

RILEY, J., and MATHIAS, J., concur.